*192
 
 FLAUM, Circuit Judge.
 

 This case presents the issue of whether a debtor is entitled to claim multiple exemptions, or to “stack” exemptions, for a single automobile under the Illinois personal property exemption statute. The district court affirmed the bankruptcy judge’s decision disallowing the stacking of exemptions. For the reasons set forth below, we reverse the decision of the district court.
 

 I.
 

 On September 12, 1983, Barker filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 701-766 (1979 & West Supp.1985). In his petition, Barker claimed that he was entitled to exempt his equity interest in a 1979 Oldsmobile Toronado up to the maximum statutory amount, $1,200, under the Illinois personal property exemption statute. Ill.Rev.Stat. ch. 110, § 12-1001(c) (1983). The trustee in bankruptcy did not object to this claim, and the bankruptcy judge granted the exemption. In addition to the $1,200, Barker claimed that under subsection (b) of the exemption provision, which permits a debtor to exempt his equity interest of up to $2,000 in “any other property,” he was entitled to exempt his remaining $1,022.72 equity in the Torona-do.
 
 Id.
 
 § 12 — 1001(b). The trustee objected to this additional claim on the ground that a debtor could only exempt $1,200 in any one motor vehicle. The bankruptcy judge entered an order denying the $1,022.72 excess equity exemption, and Barker appealed.
 

 The district court issued an order on April 14, 1984, affirming the order of the bankruptcy judge and thereby preventing Barker from stacking the exemptions of subsections (b) and (c) in order to increase his total exemption for the Toronado. On appeal, Barker claims that he is entitled to stack the maximum $1,200 equity in his car under subsection (c) and his additional equity of $1,022.72 in the same car under subsection (b), for a total personal property exemption of $2,222.72.
 

 II.
 

 A. Jurisdiction of Appeal
 

 The only reference to this court’s jurisdiction in the parties’ briefs is in the jurisdictional statement of the debtor’s brief, wherein he states that appellate jurisdiction is invoked under 28 U.S.C. § 1294 (1982). That section, however, deals with the appropriate circuit venue rather than with appellate jurisdiction. Even though neither party has challenged the jurisdiction of this court on appeal, we nevertheless will examine the jurisdictional issue at the outset since we must raise that issue
 
 sua sponte
 
 when it appears that jurisdiction may be lacking. Fed.R.Civ.P. 12(h)(3);
 
 Liberty Mutual Insurance Co. v. Wetzel,
 
 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976);
 
 In re Bassak,
 
 705 F.2d 234, 236 (7th Cir.1983).
 

 The jurisdictional provision of the Bankruptcy Act of 1978, which was effective when the debtor filed his appeal to this court,
 
 [1]
 
 provides that “a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of ... a District court of the United States” following an appeal from a bankruptcy court. 28 U.S.C. § 1293(b) (1982). Thus, the jurisdictional issue presented here is whether the district court’s order affirming the bankruptcy court’s decision denying the stacking of exemptions is final.
 

 This court has recognized that the term “final” does not have the same meaning in
 
 *193
 
 bankruptcy cases as it does in other cases brought in federal court.
 
 See, e.g., In the Matter of Fox and Fox,
 
 762 F.2d 54, 55 (7th Cir.1985). We have noted that the different meaning of finality in the bankruptcy context results from the unique nature of bankruptcy cases and may sometimes justify a more liberal reading of finality under section 1293(b).
 
 Firestone Tire & Rubber Co. v. Goldblatt Bros.,
 
 758 F.2d 1248, 1251 (7th Cir.1985). Thus, we have held that a proceeding to establish a claim against a bankrupt estate will be considered final under section 1293(b) when that proceeding is completed, even though the bankruptcy case continues.
 
 In the Matter of Fox,
 
 762 F.2d at 55. In
 
 In the Matter of Fox,
 
 we held that a district court’s order reversing a bankruptcy court’s disallowance of the claims of two banks against a bankrupt estate was not a final order because the district court reversed and remanded the case for further proceedings to determine how much the banks were entitled to and how much each of them would actually receive from the remaining assets of the estate.
 
 Id.
 
 at 55-56. We held that if the district court had affirmed the bankruptcy judge’s disallowance of the banks’ claims, however, the district court’s order would have been final.
 
 Id.
 
 at 55. We concluded that even though a district court’s order remanding a case to a bankruptcy judge would not normally be considered final for appellate purposes, such an order would be final if all that remained to be done on remand was a purely mechanical, computational, or ministerial task that was unlikely to result in a new appeal or to affect issues that the losing party might want to raise on appeal following the remand.
 
 Id.
 

 The circuits that have examined the issue presented in the present appeal have held that an order by a district court granting or denying an exemption is appealable as a final judgment.
 
 See In re White,
 
 727 F.2d 884, 885-86 (9th Cir.1984);
 
 John T. Mather Memorial Hospital v. Pearl,
 
 723 F.2d 193, 194 n. 1 (2d Cir.1983).
 
 See also
 
 1
 
 Collier on Bankruptcy
 
 3-124 (L. King 15th ed. 1984) (courts have considered orders disallowing homestead exemptions as appeala-ble). The Ninth Circuit held in
 
 In re White
 
 that the district court’s reversal of a bankruptcy court’s allowance of a homestead exemption was appealable as a final judgment because the district court had finally determined all of the issues regarding the claimed exemption. 727 F.2d at 886. The court concluded that even though the district court’s order denying the exemption did not meet the conventional test for a final judgment, since it did not terminate the entire bankruptcy case, the order finally determined and seriously affected the substantive rights of the parties and would cause irreparable harm to the losing party if he had to wait until the end of the entire bankruptcy proceeding to appeal.
 
 Id.
 
 at 885-86. The Ninth Circuit’s decision in
 
 In re White
 
 is distinguishable from its earlier decision in
 
 In re Martinez,
 
 721 F.2d 262 (9th Cir.1983), where it had held that a bankruptcy appellate panel’s
 
 [2]
 
 decision concerning the allowance of an exemption was not final because the panel in that case did not allow or deny the exemption, but rather remanded the case for further findings as to the central issue of whether the debtors’ homesteaded residence was held in community or joint tenancy.
 
 In re White,
 
 727 F.2d at 886.
 

 In
 
 In the Matter of Brissette,
 
 561 F.2d 779 (9th Cir.1977), the Ninth Circuit also held that orders granting or denying exemptions should be immediately reviewable.
 
 [3]
 
 The court noted that decisions about
 
 *194
 
 the status of exempt property can and frequently do determine the entire course of the bankruptcy proceeding because. they involve disputes over what belongs in the bankrupt estate.
 
 Id.
 
 at 781-82. The court reasoned that even though the exemption decision is technically interlocutory, it is frequently the final resolution of the parties’ rights for practical purposes.
 
 Id.
 
 at 782. The court explained that a decision that property is exempt could deplete the potential estate to such a degree that creditors would decline to participate further in the proceeding.
 
 Id.
 
 On the other hand, a decision that the property is not exempt would cause title to such property to vest in the trustee during the pendency of the action with all the attendant consequences of vesting.
 
 Id.
 

 In the present case, we join the other circuits that have considered this issue and conclude that we have jurisdiction to hear the debtor’s appeal from the district court’s affirmance of the bankruptcy court’s decision denying the stacking of exemptions. The district court’s order results in the debtor’s excess equity in the car vesting in the trustee during the pend-ency of the action, thereby permitting the trustee to administer this equity as an asset of the bankruptcy estate and to sell the vehicle to a third party. Since the district court’s order finally determines all of the issues regarding the claimed exemptions and seriously affects the substantive rights of the parties even though it does not terminate the entire bankruptcy proceeding, we hold that the district court’s order is final under section 1293(b).
 

 B. Stacking of Exemptions
 

 The Illinois personal property exemption provision exempts in part the following items from judgment, attachment, or distress for rent: (1) the necessary wearing apparel, Bible, school books, and family pictures of the debtor and the debtor’s dependents; (2) the debtor’s equity interest, not to exceed $2,000 in value, in any other property; and (3) the debtor’s interest, not to exceed $1,200 in value, in any one motor vehicle. Ill.Rev.Stat. ch. 110, § 12-1001(a)-(c) (1983).
 
 [4]
 
 The trustee, relying on the precedent established by the district court of the Central District of Illinois, argues that Barker cannot claim the additional equity in his car, $1,022.72, under subsection (b) of the personal property exemption statute, but rather can only claim the $1,200 statutory maximum under subsection (c).
 
 See, e.g., In re Pastorek, Jr.,
 
 33 B.R. 406 (C.D.Ill.1983). Barker, on the other hand, cites cases from the Northern and Southern Districts of Illinois that have allowed a debtor to stack his exemptions under subsections (b) and (c) in one vehicle.
 
 See, e.g., In re Terry,
 
 41 B.R. 508 (Bankr.N.D.Ill.1984);
 
 In re Cullen,
 
 21 B.R. 118 (Bankr.S.D.Ill.1982).
 

 The Illinois courts have followed the well-established principle that the primary goal of statutory construction is to ascertain and effectuate the legislature’s intent.
 
 See In re Marriage of Logston,
 
 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984). In construing a statute, a court should first examine the statutory language itself.
 
 Id.
 
 at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171. If the court finds that the language is clear and unambiguous, then the court should give that lan
 
 *195
 
 guage its effect and should not resort to extrinsic aids in construing the statute.
 
 Id.
 
 at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171. When a statute is subject to various interpretations, however, a court should look to other sources for evidence of the legislative intent such as the statute’s legislative history, the reason for the statute’s enactment, the circumstances that led to its adoption, and the ends that the legislature wished to achieve.
 
 Id.
 
 at 279, 82 Ill.Dec. at 638, 469 N.E.2d at 172.
 

 Applying these general principles of statutory construction, we find that the Illinois personal property exemption statute is ambiguous on its face and susceptible of various interpretations. First, the reference to “any other property” in subsection (b) could mean that a debtor can exempt his equity interest up to a maximum of $2,000 in any property not specifically exempted in any other subsection of section 12-1001.
 
 See In re Pastorek,
 
 33 B.R. at 407. Since subsection (c) specifically exempts a maximum of $1,200 in any one motor vehicle, a debtor would not be able to include any excess equity in that vehicle in the general $2,000 exemption under subsection (b).
 
 Id.
 
 One might also interpret subsection (b) as permitting a debtor to exempt any property of his estate, including the equity remaining in a motor vehicle after the specific exemption of (c) has been used.
 
 See In re Terry,
 
 41 B.R. at 509;
 
 In re Cullen,
 
 21 B.R. at 119-20. Under this latter interpretation, the remaining equity in a debtor’s vehicle would be encompassed by the reference in subsection (b) to “other property.”
 
 In re Terry,
 
 41 B.R. at 509. Finally, the trustee argues that pursuant to the doctrine of
 
 ejusdem generis,
 
 the language of subsection (b) permits a debtor to exempt an additional $2,000 of items in the same general class as the items listed in subsection (a), including wearing apparel, a Bible, school books, and family pictures, since subsection (b) is connected to subsection (a) by the word “and” and since there is no connecting word between subsections (b) and (c). Under this view, a debtor would not be able to exempt the additional equity in his car after taking the $1,200 exemption of subsection (c).
 

 Each of the first two interpretations of section 12-1001 is reasonable in light of the language of the statute. As to the third interpretation advanced by the trustee, although we cannot explain the reason for the inclusion of the word “and” between subsections (a) and (b), we do not think that subsection (b) can be interpreted to limit a debtor to an exemption of $2,000 covering items similar to those listed in subsection (a). First, there is no dollar limit on the amount of items that a debtor can exempt under subsection (a), so there would be no need for subsection (b) if its only function was to allow a debtor to exempt an additional $2,000 worth of similar items. Furthermore, one could interpret the term “other” in the phrase “any other property” of subsection (b) as allowing a debtor to exempt $2,000 worth of any property other than the property previously listed in subsection (a).
 

 Since the statute is subject to various interpretations as evidenced by the split among the district and bankruptcy courts of the Central District of Illinois and those of the Northern and Southern Districts of Illinois, we must look to the statute’s legislative history and the Illinois courts’ general view as to how to construe exemption statutes in order to shed light on the legislature’s intent in enacting section 12-1001. At common law, all of the debtor’s property was subject to execution.
 
 In re Marriage of Logston,
 
 103 Ill.2d at 279, 82 Ill.Dec. at 638, 469 N.E.2d at 172. Since state legislatures viewed debtors with more compassion, all of the fifty states enacted personal property exemption statutes.
 
 Id.
 
 at 279, 82 Ill.Dec. at 638, 469 N.E.2d at 172. In 1843, the Illinois legislature enacted the predecessor to section 12-1001 in an attempt to prevent a debtor from being completely deprived of the means of supporting his family and from becoming a public charge.
 
 Id.
 
 at 279, 82 Ill.Dec. at 638, 469 N.E.2d at 172. Following the enactment of the Bankruptcy Reform Act of 1978, which increased the relief available to debtors by granting certain exemptions, the Illinois
 
 *196
 
 legislature expanded the available personal property exemptions by increasing the types of property and the amounts of property that could be exempted.
 
 [5]
 

 In re Cullen,
 
 21 B.R. at 119;
 
 In re Marriage of Logston,
 
 108 Ill.2d at 281-82, 82 Ill.Dec. at 639-40, 469 N.E.2d at 173-74.
 

 In addition to this legislative history, this circuit and the courts in Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature’s purpose in enacting them — to protect debtors.
 
 See In the Matter of Schriar,
 
 284 F.2d 471, 473-74 (7th Cir.1960);
 
 In re Feilchenfeld,
 
 99 F.2d 710, 711 (7th Cir.1938);
 
 Finlen v. Howard,
 
 126 Ill. 259, 262, 18 N.E. 560, 561 (1888);
 
 Washburn v. Goodheart,
 
 88 Ill. 229, 231 (1878);
 
 Burns v. Turner,
 
 193 Ill.App. 172, 175 (1915);
 
 McClellan v. Powell,
 
 109 Ill.App. 222, 225 (1902). This clear legislative intent to grant protections to debtors and the courts’ liberal construction of exemption statutes convince us that in a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a manner that favors the debtor. In the absence of a more specific statement by the Illinois legislature that a debtor cannot use the $2,000 general exemption in subsection (b) to exempt the remaining equity in a car, we must conclude that a debtor is entitled to stack his exemptions for the same motor vehicle under both subsections (b) and (c).
 

 In conclusion, the district court’s order affirming the bankruptcy judge’s decision disallowing the stacking of exemptions is reversed.
 

 [1]
 

 . Barker filed his notice of appeal on May 1, 1984, when the transitional provisions of the Bankruptcy Act of 1978, Pub.L. No. 95-598, § 405(c)(2), 92 Stat. 2685 (Nov. 6, 1978), were in force. The jurisdictional provision of the 1978 Act, 28 U.S.C. § 1293(b) (1982), was implicitly repealed by the jurisdictional provision added by the July 1984 amendments to the Bankruptcy Reform Act of 1978. 28 U.S.C.A. § 158(d) (West Supp.1985). Section 158(b) and section 1293(b) are virtually identical except for immaterial variations in wording.
 
 Cash Currency Exchange, Inc. v. Shine,
 
 762 F.2d 542, 546 n. 4 (7th Cir.1985);
 
 Firestone Tire & Rubber Co. v. Goldblatt Bros.,
 
 758 F.2d 1248, 1250 n. 1 (7th Cir.1985);
 
 In the Matter of Riggsby,
 
 745 F.2d 1153, 1154-55 (7th Cir.1984).
 

 [2]
 

 . An appellate bankruptcy panel is composed of three bankruptcy judges appointed by the chief judge of a circuit to hear appeals from judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 160 (1982). Under section 1293(b), a court of appeals has jurisdiction of an appeal from a final judgment, order, or decree of either an appellate panel created under 28 U.S.C. § 160 or a district court, or from a final judgment, order, or decree of a bankruptcy court if the parties agree to a direct appeal to the court of appeals. 28 U.S.C. § 1293(b) (1982).
 

 [3]
 

 . Although the court in
 
 In the Matter of Brissette,
 
 561 F.2d 779 (9th Cir.1977), held that orders granting or denying exemptions should be immediately reviewable, the court did not hold
 
 *194
 
 that such orders were final.
 
 In re White,
 
 727 F.2d 884, 886 (9th Cir.1984). At the time that
 
 In the Matter of Brissette
 
 was decided, an appellate court could hear interlocutory appeals in certain bankruptcy matters.
 
 Id.
 
 Even though an appellate court does not have jurisdiction over interlocutory orders under the present bankruptcy law, the general discussion of the nature of orders granting or denying exemptions in
 
 In the Matter of Brissette
 
 is applicable to cases such as the present one involving the Bankruptcy Act of 1978.
 
 Id.
 

 [4]
 

 . We refer to the Illinois personal property exemption provision to decide the issue in this case because in 1980, the Illinois legislature chose to opt out of the federal exemption scheme pursuant to 11 U.S.C. § 522(b)(1) (1982) of the federal Bankruptcy Code, thereby restricting Illinois residents to the exemptions provided under Illinois law.
 
 See In re Cullen,
 
 21 B.R. 118, 119 (Bankr.S.D.Ill.1982);
 
 In re Marriage of Logston,
 
 103 Ill.2d 266, 281, 82 Ill.Dec. 633, 639, 469 N.E.2d 167, 173 (1984).
 

 [5]
 

 . The trustee argues that if the Illinois legislature had actually intended to allow a debtor to use his general exemption to exempt his remaining equity over $1,200 in a vehicle, then it could have followed the language used by Congress in the federal exemptions of the Bankruptcy Reform Act of 1978. The general federal exemption allows a debtor to exempt $400 in value plus any unused amount of his homestead exemption in any property. 11 U.S.C. § 522(d)(5) (1982). We are unconvinced that the failure of the Illinois legislature to adopt the language used in the federal exemption provisions indicates that the legislature did not want to allow stacking especially since the Illinois legislature was attempting to work within and revise the language of a statute that had been in existence in Illinois since 1843.
 
 See In re Marriage of Logston,
 
 103 Ill.2d at 279-80, 82 Ill.Dec. at 638-39, 469 N.E.2d at 172-73.