**In re Dennis L. ALLMAN, Debtor.**

**Bankruptcy No. 185 B 01677.**

United States Bankruptcy Court, C.D. Illinois.

March 13, 1986.

James Coryn, Coryn, Walker and Meehan, Rock Island, Ill., for Dennis Allman.

Michael A. Lynch, Califf, Harper, Fox, Dailey & Slover, Moline, Ill., for the Bank.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The debtor has filed a motion pursuant to 11 U.S.C. § 522(f)(2)(B) to avoid a nonpurchase money security interest held by First Midwest Bank of Moline ("the Bank") in the debtor's tools of trade given to the Bank by the debtor when he borrowed $6,007 from the Bank prior to filing his Chapter 7 petition. Included as collateral for that loan was a 1981 Barr Utility trailer, ladders, aluminum stage plank, porta brake, two double step ladders, porta louvre cuttle, and a Craftsman arm saw. The debtor values this collateral at $1,600, asserts that it is all tools of his trade (the debtor listed his business as "siding application" on his statement of affairs), claims it all as exempt, and seeks to avoid the Bank's lien to that extent under § 522(f)(2)(B).

Section 522(f)(2)(B) permits a debtor to avoid a lien if four requirements are met: (1) the lien the debtor seeks to avoid is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or any dependents; (2) the debtor has an interest in the property; (3) the debtor claims an exemption in the property to which the

debtor is entitled under § 522(b); and (4) the creditor's lien impairs the debtor's exemption. 11 U.S.C. § 522(f)(2)(B).

■ The debtor clearly satisfies the first two criteria. The debtor's allegations stand unrefuted that he did not use the loan to purchase the tools of trade but rather had owned the collateral before receiving the loan. The Bank's interest in the collateral results from the consensual security agreement it entered into with the debtor. Therefore, the Bank has a non-purchase money security interest in the debtor's tools of trade.[1] The debtor continues to own and possess the property to this day.

A somewhat more difficult issue is raised in connection with the final two requirements of § 522(f)(2)(B), i.e. whether the debtor is entitled to claim an exemption in the tools of trade and, if so, whether the Bank's lien impairs that exemption. Illinois has chosen to opt out of the Bankruptcy Code exemptions, Ill.Ann.Stat. ch. 110, § 12–1201 (Smith-Hurd 1985); therefore, the debtor is limited in this case to asserting those exemptions he would be entitled to claim under Illinois law. The debtor has claimed the full $750 exemption in his equity interest in tools of trade under § 12–1001(d). Section 12–1001(d) provides that a debtor may claim as exempt "[t]he debtor's equity interest, not to exceed $750 in value, in any implements, professional books or tools of the trade of the debtor." The Bank agrees that the debtor is entitled to this exemption and that its lien impairs the debtor's rights under § 12–1001(d). Therefore, the Bank concedes the debtor at a minimum can avoid the Bank's lien to the extent of $750.

The debtor asserts that he may avoid the additional $850 of the Bank's lien in his tools of trade by claiming that amount as

exempt under the Illinois "wild card" exemption. Ill.Ann.Stat. ch. 110, § 12–1001(b) (Smith-Hurd 1985). This provision allows a debtor to claim an exemption in "[t]he debtor's equity interest, not to exceed $2,000 in value, in any other property." The Bank argues that the debtor cannot exempt the additional $850 in tools of his trade for two reasons: (1) the tools of trade exemption permitted by subsection (d) provides the statutory maximum for that type of property; and (2) the last paragraph of § 12–1001(h) specifically limits the exemptions provided for in § 12–1001 to personal property used for personal rather than business purposes.

The Bank's first argument is readily disposed of by reference to the Seventh Circuit's opinion in *Matter of Barker*, 768 F.2d 191 (7th Cir.1985). In that opinion the court held that the phrase "any other property" in the wild card exemption provision must be read in a broad fashion to favor debtors. *Id.* at 196. Consequently, the *Barker* court permitted the debtor to stack his exemptions, i.e. to use the $2,000 wild card exemption to exempt the equity remaining in his car after he had used the $1,200 automobile exemption set out in § 12–1001(c).[2] *Id.* The debtor here also seeks to stack the wild card exemption and another exemption provided for in § 12–1001. *Barker* specifically permits such action.

The Bank, however, claims that § 12–1001 contains another provision that prevents this result. Section 12–1001(h) provides in the last paragraph that "[t]he personal property exemptions set forth in this Section shall apply only to individuals and only to personal property which is used for personal rather than business purposes." Ill.Ann.Stat. ch. 110, § 12–1001(h) (Smith-Hurd 1985). This provision was added to the Illinois exemption statute on December

---

**1.** The Bank does not challenge that all of the items in question here are in fact tools of trade.

**2.** This Court has extended *Barker* to allow a debtor to stack the wild card exemption and an

exemption provided for in a separate Illinois exemption provision providing for the exemption of a debtor's wages, Ill.Ann.Stat. ch. 110, § 12–803 (Smith-Hurd 1985). *In re Johnson*, 53 B.R. 919, 923 (Bankr.N.D.Ill.1985).

2, 1983,[3] one year and five months after the current version of § 12–1001 became effective.[4] The Bank contends that because the debtor's tools of trade are used for business purposes, subsection (h) precludes him from claiming a wild card exemption in them. However, this argument is difficult to reconcile with the entire statutory pattern in § 12–1001, because taken one step further the Bank's argument would also suggest that this amendment impliedly repealed the tools of trade exemption in § 12–1001(d), thus denying this debtor *any* exemption in the collateral subject to the Bank's security interest since the debtor uses his tools of trade for business rather than personal purposes. This Court does not believe that the Illinois legislature intended to cause this anomalous result or to limit the debtor's right to maximize the tools of trade exemption under all available Illinois exemption laws especially in light of the legislature's concern over the plight of Illinois farmers, who would suffer if they were unable to claim an exemption in their farm implements under subsection (d).

Basic notions of statutory construction require this Court to attempt to ascertain and effectuate the legislature's intent in enacting the Illinois personal property exemption statute and amendments thereto. The first step is to examine the language itself. *Barker*, 768 F.2d at 194. If the language is clear and unambiguous, the court must give that language its effect. *Id.* at 194–95. If the language is ambiguous, and thus subject to various interpretations, the court may resort to extrinsic aids to construe the statute. *Id.* at 195.

The *Barker* court found the wild card exemption provision to be ambiguous and interpreted it to allow debtors to stack their exemptions. This Court already has stated that it fully subscribes to *Barker*'s holding and indeed is bound by it. The exemption contained in subsection (d) is clear and unambiguous on its face. It permits debtors to exempt up to $750 of their equity interest in implements, professional books, or tools of trade. In light of *Barker* and the plain meaning of subsection (d), a debtor must be able to claim the full $750 tools of trade exemption under subsection (d) notwithstanding the last paragraph of § 12–1001(h). Although the last paragraph of § 12–1001(h) appears clear and unambiguous by itself, when read in conjunction with subsection (d) a conflict becomes apparent. Implements or tools of trade by definition are property used by a debtor for business purposes.[5] The amendment to subsection (h) arguably repeals subsection (d) and prevents a debtor from claiming tools of trade as exempt under the wild card provision.

The Court must resort to rules of statutory construction to resolve this seemingly hopeless conflict caused by the amendment to § 12–1001. It should be noted as a preliminary matter that there is no meaningful legislative discussion or debate on the amendment. The Illinois legislature originally passed the amendment to § 12–1001(h) with just the provision that the exemption statute applied only to individuals. The governor by amendatory veto

**3.** The last paragraph to subsection (h) was added by P.A. 83–968, § 1.

**4.** Illinois exemption law was completely revamped on January 1, 1982 by a new law with similar provisions to the current § 12–1001. *See* P.A. 82–685, § 2. However, a legislative gaffe reinstated the former exemption provisions when the new Illinois Code of Civil Procedure was adopted effective July 1, 1982. The error was corrected with the repeal of the former exemption law and replacement with the newer, more generous version of § 12–1001 effective July 13, 1982. *See* P.A. 82–280, § 12–1001; ·P.A. 82–783, Art. III, § 43.

**5.** Undefined terms should be given their plain and ordinary meaning in the absence of contrary judicial construction. *Matter of Weinbrenner*, 53 B.R. 571, 577 (Bankr.W.D.Wis.1985). The Bankruptcy Code does not define "implement," "tools," or "trade." The plain meaning of "implement" is "a tool or utensil forming part of equipment for work." Webster's Third New International Dictionary 1134 (3rd unabridged ed. 1981). The plain meaning of "tool" is "an instrument used or worked by hand." *Id.* at 2408. The plain meaning of "trade" is "the business one practices or the work in which one engages regularly." *Id.* at 2421. *See also In re Quidley*, 39 B.R. 362, 367 (Bankr.E.D.Va.1984).

added the provision that exemptions could be claimed only in property used for business purposes. *See* S.B. 1157. Senator Berman, who introduced the bill, stated that the governor's amendment "made the bill more specific to exclude ... business property from the exemption Statute which was our original intent." S.Res. 1157, 83d Gen.Ass., Oct. 18, 1983 (statement of Sen. Berman).

The Court should consider other extrinsic aids to determine the provision's effect on § 12-1001. *See* 2A Sutherland, Statutory Construction, § 48.01 *et seq.* (1984). The statute's purpose is of paramount importance. The Illinois exemption statute was passed to protect debtors and their families. *Barker,* 768 F.2d at 196. It must be given a liberal interpretation as a result. *Id.* Where an exemption statute might be interpreted either favorably or unfavorably for the debtor, the court should construe it to favor the debtor. *Id.* This is especially true in the absence of a clear legislative statement not to favor the debtor. Under these rules of construction, the Court holds that this debtor may claim a $750 tools of trade exemption under subparagraph (d) and may exempt his excess equity of $850 pursuant to the wild card provision of § 12-1001.

There is no evidence that the Illinois legislature intended to repeal the tools of trade exemption by limiting exemptions to property used for personal purposes. All indications are to the contrary.[6] The most logical reading of the amendment to § 12-1001(h) is that it prevents a debtor from claiming a wild card exemption in personal property used for business other than implements, professional books, or tools of trade. It constrains logic to interpret the

amendment to prevent a debtor from claiming excess equity in tools of trade as exempt under the wild card provision. The stacking of such exemptions protects debtors and their families by facilitating their financial rejuvination. Exemption statutes are not designed to benefit creditors, but rather are intended to prevent debtors from being completely deprived of the means of supporting their families and from becoming public charges. *Barker,* 768 F.2d at 195. The legislature in § 12-1001(d) specifically deemed tools of trade as essential in effectuating that purpose. The wild card exemption affords the debtor additional protection. Combining the two exemptions enhances a debtor's opportunity to realize self-sufficiency. Only specific statutory language or clear legislative intent can overcome this result. Consequently, the debtor may avoid the Bank's lien in the amount of $1,600, which is the extent that it impairs his exemptions under §§ 12-1001(b) and (d).

---

6. P.A. 83–968, § 1 amended not only § 12–1001, but also § 12–1002. Section 12–1002 sets forth the procedure debtors must follow when scheduling property as exempt. The amendment to § 12–1002 stated *inter alia* that schedules may be filed on behalf of debtors who failed to file them, but any property claimed as exempt under those schedules pursuant to §§ 12–1001(b), (c), and (d) may have to be appraised so that a proper exemption amount may be determined.

Thus, in the same public act that amended § 12–1001(h) to exclude property used for business purposes, the legislature amended § 12–1002 specifically to allow the appraisal and exemption of property under § 12–1001(d). The legislature obviously would not have provided for the appraisal and exemption of tools of trade if it had intended the amendment of § 12–1001(h) to repeal that exemption.