**In re Tom POYNOR (Deceased) and Kathleen Poynor, Debtors.**

Bankruptcy No. 386–32120 M–7.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 15, 1987.

Philip I. Palmer, Jr., Elizabeth A. Bates, Dallas, Tex., for debtor.

Robin E. Phelan, Dallas, Tex., for trustee.

## MEMORANDUM OPINION ON DEBTOR KATHLEEN POYNOR'S EXEMPTION CLAIM TO INSURANCE PROCEEDS

ROBERT C. McGUIRE, Chief Judge.

This matter came before the Court for hearing on January 12, 1987 on the objections of the Trustee and various creditors to Debtor Kathleen Poynor's ("K.P.") claim of exemption on proceeds from insurance policies.

The basic issue in this case is which subsection under § 522 of the Bankruptcy Code applies when determining the exemption applicable to life insurance proceeds received or claimed by K.P. within 180 days after the filing date of the bankruptcy petition filed by Tom Poynor ("T.P.") and K.P. T.P. relies on § 522(d)(7) and (8) and the trustee relies on § 522(d)(11).

This opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

The underlying facts are basically undisputed.

On or about June 20, 1986, T.P. and K.P. ("Debtors") filed a joint voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

In the original schedules filed, Debtors selected the state exemptions authorized under Texas Property Code §§ 41.001 and 42.001.

On October 27, 1986, K.P. and the Estate of T.P. amended Schedule B-4, changing from State to Federal exemptions and claimed $500,000 term life on T.P.'s life as exempt under 11 U.S.C. § 522(d)(11)(C). In briefs before the Court, but not further amended Schedules, K.P. claims she is entitled to the Equitable and Columbus proceeds under § 522(d)(7) and (8). In view of the following decision by the Court, it is unnecessary to determine whether K.P. had possibly made a judicial admission as to the applicability of § 522(d)(11)(C). Furthermore, the issue of the applicability of § 522(d)(7) and (8) appears to have been tried by implied consent of the parties participating.

Subsequent to June 20, 1986, K.P. sent payment checks to Equitable Life Assurance Society of the United States ("Equitable") and Columbus Mutual Life Insurance Company ("Columbus"). These payments were for past due premiums on term life insurance policies on the life of Tom Poynor. On the date of the petition, these policies were beyond the period of mandatory reinstatement, during which a payment would arbitrarily reinstate the policies. Each insurance company, however, retained K.P.'s check without returning the same.

On August 11, 1986, T.P. died in an automobile wreck.

In July, 1984, the first premium was paid to Columbus for its policy CM 200 25380 which insured the life of T.P. with K.P. as beneficiary. The face amount was $250,-000, with an additional $50,000 as an accidental death benefit. The policy was ordi-

nary life at first, converted to a term policy in December, 1985.

In May, 1983, Equitable issued a term policy of $500,000 on the life of T.P. insuring his life, with K.P. as beneficiary.

In November, 1986, Equitable paid $10,000 to Restland Funeral Home for T.P.'s funeral expenses, and $490,000 to K.P., and cashed K.P.'s premium check for $456, which it had been holding.

Columbus is disputing liability on its insurance policy on the life of T.P. A claim against Columbus is being pursued in State Court. The Equitable and Columbus insurance policies were term policies, having no cash surrender value.

December 17, 1986 was the 180th day after the filing of Debtors' joint petition.

As support for her claim that the life insurance proceeds are exempt under § 522(d)(7) and (8), K.P. cites *BancOhio Nat'l. Bank v. Walters*, 724 F.2d 1081 (4th Cir.1984). The Bankruptcy Court opinion is found at 14 B.R. 92. In *Walters*, the debtors, husband and wife, filed a voluntary joint petition under Chapter 13 of the Bankruptcy Code. On the date of the joint petition, the debtors were the owners of numerous insurance policies on the life of their seven-year-old son. Seven days after the filing of the original petition, the debtors' son died. The debtors claimed the insurance policies insuring the life of their son as exempt property pursuant to the provisions of 11 U.S.C. § 522(d)(7) and (8) of the Bankruptcy Code.

As owners and beneficiaries of the insurance policies, the debtors were paid the proceeds on the life insurance policies. BancOhio, a creditor, filed objections to the claimed exemption of the proceeds. As a result of a hearing held on the objections to the claimed exemption of proceeds, the court overruled BancOhio's objections, finding the proceeds to be exempt under § 522(d)(7) of the Bankruptcy Code.

The *Walters* court based its opinion on an apparent conflict between 11 U.S.C. § 541(a)(5), which requires that proceeds of life insurance policies paid to a bankrupt/beneficiary within 180 days of the filing of the petition be included in the estate, and the exemptions provided for under § 522(d)(7) and (8). The *Walters* court found that the language of § 522(d) was dominant over § 541. On that basis, the *Walters* court found that the debtor may properly elect the § 522(d)(7) exemption to exempt not only the policy itself, but also the proceeds of the policies in issue. Therefore, the *Walters* court concluded that the proceeds derived from such policies owned by the debtor and claimed by him as exempt flow as an incident of ownership of the contract to the debtor rather than to the estate. Neither the Bankruptcy Court, nor the Fourth Circuit discussed or mentioned § 522(d)(11)(C) of the Bankruptcy Code.

■ The insurance proceeds start off as property of the debtor's estate pursuant to § 541(a)(5)(C), which provides that the debtor's estate includes:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date— ... as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5)(C). The insurance contract itself, however, is governed by § 541(a)(1). Section 541(a)(1) provides:

> The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ... all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).` Even exempt property must initially be regarded as property of the estate and then claimed and distributed as exempt. *See In re McAlister*, 56 B.R. 164, 166 (Bankr.D.Ore.1985); *In re Hendricks*, 11 B.R. 48, 50 (Bankr.W.D.Mo. 1981).

Even though the insurance contract and insurance proceeds are property of the debtor's estate, § 522 of the Bankruptcy

Code entitles an individual debtor to exempt from property of the estate various interests enumerated in § 522(d) of the Bankruptcy Code. Section 522(d) provides in pertinent part that the following property may be exempted by the debtor: (with regard to the insurance contract itself as owner of the contract)

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $4,000 ... in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(with regard to the insurance proceeds as the beneficiary)

(11) The debtor's right to receive, or property that is traceable to— ... (C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

11 U.S.C. § 522(d)(7), (8) and (11)(C).

■ It appears that the intent of Congress is that two separate and distinct rights are provided for under § 522(d). Paragraphs (7) and (8), similar to § 541(a)(1), are designed solely to protect the *ownership interests* and cash value in a life insurance policy. On the other hand, paragraph (11), similar to § 541(a)(5), is designed to protect the *beneficiary interests* in a life insurance contract. The legislative history appears to support this distinction. The legislative history states:

Paragraph (7) exempts a life insurance contract, other than a credit life insurance contract, owned by the debtor. *This paragraph refers to the life insurance contract itself.* It does not encompass any other rights under the contract, such as the right to borrow out the loan value. Because of this provision, the trustee may not surrender a life insur-

ance contract, which remains property of the debtor if he chooses the Federal exemptions. Paragraph (8) permits the debtor to exempt up to $5000 in loan value in a life insurance policy owned by the debtor under which the debtor or an individual of whom the debtor is a dependent is the insured. The exemption provided by this paragraph and paragraph (7) will also include the debtor's rights in a group insurance certificate under which the insured is an individual of whom the debtor is a dependent (assuming the debtor has rights in the policy that could be exempted) or the debtor. A trustee is authorized to collect the entire loan value on every life insurance policy owned by the debtor as property of the estate. First, however, the debtor will choose which policy or policies under which the loan value will be exempted....

(Emphasis added).

■ Because of the exemptions under paragraphs (7) and (8), the trustee may not surrender a life insurance contract which remains property of the debtor if the debtor/owner chooses to claim the life insurance contract as exempt. Paragraph (11), on the other hand, covers the debtor's rights as the beneficiary under the life insurance contract, whether or not the debtor is the owner of the contract. Paragraph (11) allows the debtor/beneficiary to exempt from property of the estate the proceeds of a matured life insurance contract "to the extent reasonably necessary for the support of the debtor" whether or not the debtor is the owner of the policy.

To allow the debtor/beneficiary to exempt life insurance proceeds greater than the extent "reasonably necessary for support" would provide the debtor with a windfall. If the full amount of the insurance proceeds are necessary for the support of the debtor, then the Code adequately protects the debtor/beneficiary. However, if the full amount of insurance proceeds are not necessary for the reasonable support of the debtor, the intent of the

Bankruptcy Code appears to require such excess to be available to the creditors.

It appears that the court in *Walters* failed to make a distinction between the ownership rights of a life insurance contract, provided for in § 522(d)(7) and (8) and § 541(a)(1), and the beneficiary rights provided for in § 522(d)(11)(C) and § 541(a)(5). Because of the failure to make such distinction between ownership rights and beneficiary rights in an insurance contract, the *Walters* court incorrectly concluded that proceeds of an insurance contract flow "as an incident of ownership of the contract." In fact, the proceeds appear not to flow from rights as an owner of the policy, but from rights as a beneficiary. This distinction between ownership rights and beneficiary rights appears to be more consistent with the intent of the Bankruptcy Code. *See, In re Howard,* 6 B.R. 220, 6 B.C.D. 1011 (Bankr.S.D.Ohio 1980), where the court discusses attributes of ownership.

As the court stated in *In re Woodson,* No. C 85–3960 SW, Bankruptcy No. 1–84–00982, Slip Opinion, N.D.Ca.1985, when confronted with a similar problem:

> *The interest of the debtor as beneficiary of the policy is distinct from his ownership interest:* each interest has certain rights and privileges. It is entirely within the contemplation of the statutory language that differing interests in the same property will accrue to an individual at different points in time. . . .

This Court joins with the *Woodson* court in declining to follow the *Walters* opinion.

The Trustee cites *In re Swartz,* 18 B.R. 454, 456 (Bankr.D.Mass.1982) (case primarily discussing § 522(d)(8)) for that court's statement that:

> The purpose of an exemption under the Bankruptcy Code is not for the personal privilege of the debtor, but for the benefit of this family who may be destitute and the public who might otherwise be burdened with the support of an insolvent debtor's family.

The Trustee also cites *In re Gallo,* 49 B.R. 28 (Bankr.N.D.Tex.1985) for its discussion of § 522(d)(11)(C). However, that case primarily dealt with the extent to which, if any, the practice of stacking of Federal and State exemptions could continue under the 1984 amendments. The case does not discuss § 522(d)(7). In the last paragraph of the opinion, the court went on to say that the entire $275,000 insurance proceeds was reasonable to the wife for future support under § 522(d)(11)(C).

Lastly, the Trustee contends that, by virtue of the alleged lapse of the policies, K.P. was not the owner of the insurance policies on the date of the petition. The parties, in open court, stipulated that they were reserving proof on ultimate ownership of the policies for further proof, but were submitting the question of which Code section applied to the dispute, *i.e.*, § 522(d)(7) or (8), or § 522(d)(11)(C). In view of the opinion previously expressed herein, it is not necessary for the Court to reach the last contention of the Trustee.

An order will be entered in accordance with the foregoing opinion.