In re Agnes Bernice WHALEN, Debtor.

WEMPLE STATE BANK and First State Bank of New Berlin, Appellants,

v.

Agnes Bernice WHALEN, Appellee.

Larry WERRIES, Director of the Illinois Department of Agriculture, Appellant,

v.

Agnes Bernice WHALEN, Appellee.

Nos. 86–3280, 86–3281.

United States District Court, C.D. Illinois, Springfield Division.

June 1, 1987.

Frank A. Hess, Asst. Atty. Gen., Springfield, Ill., for Larry Werries.

Robert Magill, Springfield, Ill., Trustee.

Richard Edwards, Springfield, Ill., for Wemple State Bank.

Patrick Sheehan, Springfield, Ill., for First State Bank of New Berlin.

Robert T. Lawley, Springfield, Ill., for Agnes Bernice Whalen.

Joe Cummarata, Dept. of Justice, Tax Div., Washington, D.C., Patrick Chesley, Asst. U.S. Atty., Springfield, Ill., for U.S.

Brown, Hay & Stephens, Springfield, Ill., for Sentry Life Ins.

Rick Verticchio, Gillespie, Ill., for Verticchio & Verticchio.

## OPINION AND ORDER

MILLS, District Judge:

Bankruptcy appeal.

A question of personal property exemption.

This cause is before the district court upon interlocutory appeal of the bankruptcy court's order dated September 10, 1986, in the pending bankruptcy proceeding.

Upon the application of certain creditors, this Court, on October 24, 1986, allowed a motion for leave to appeal the interlocutory order for the purpose of addressing a question of first impression[1]—whether § 12–1001(h)(3) of the Illinois Personal Property Exemptions Statute (1) places a two-year limit on the exemption for reasonable support payments from the proceeds of a life insurance policy, or (2) is merely a limita-

tion on the debtor's right to claim the exemption.

We hold that the statute *does not* place a limit on the duration insurance payments are exempt, and affirm the decision of the bankruptcy court.

### Facts [2]

On January 3, 1987, the debtor, Agnes Bernice Whalen, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In her Schedule B4 form, she claimed as exempt under Illinois law the proceeds of two insurance policies issued by the Sentry Life Insurance Company insuring the life of her deceased husband, Richard E. Whalen. The face value of the combined policies exceeds $100,000.

Appellants, Wemple State Bank, First State Bank of New Berlin, Larry Werries, Director of the Illinois Department of Agriculture, and the bankruptcy trustee all filed objections to the debtor's Schedule B4.[3] On April 22, 1986, a hearing was held on these objections and on September 10, 1986, the Court denied the objections. In particular, the Court ruled that § 12–1001(h)(3) does not impose a two-year limit on the time period for which payment under a life insurance policy may be used for the debtor's support, but instead only limits the debtor's right to claim or assert the exemption. The appellants then moved for interlocutory appeal. This Court, noting the dearth of Illinois law on this question and its importance to the ultimate resolution of Ms. Whalen's bankruptcy, allowed leave to appeal on October 24, 1986.

### Discussion

Appellants' position can be inferred from the aforementioned framing of the issues:

Our scrutiny of the bankruptcy court's decision is confined solely to its legal conclusions, which are subject to *de novo* review. *In re Kimzey,* 761 F.2d 421 (7th Cir.1985).

1. In addition to the primary issue on appeal, the appellants argue that the personal property exemption contained in Ill.Rev.Stat. ch. 110, ¶ 12–1001(h)(3) is unavailable to the debtor because both she and the insured were jointly liable on the debt. Because this issue was not certified for interlocutory review, and was not the subject of the bankruptcy court's order below, we do not address it in this opinion.

2. The facts relevant to a determination of the above-stated issue are essentially undisputed.

3. The Whalens' debts arose primarily from the failure of Whalen & Sons Grain Company, Inc., in February 1984. At the time the petition was filed, the debtor and her husband were liable to the Illinois Department of Agriculture for in excess of $500,000.

they maintain that § 12–1001(h)(3) limits the life insurance exemption to two years reasonable support from the date of Richard Whalen's death. Not surprisingly, the debtor aligns herself with the bankruptcy court's holding that the two-year provision only limits her right *to claim or assert* the exemption, without any limitation on the duration of the support award. As always, our primary goal is to ascertain and effectuate the legislature's intent. *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984).

We begin our analysis with the language of the exemption itself which, at the critical part, is as clear as mud. Section 12–1001(h)(3) provides in relevant part:

Personal property exempt. The following personal property, owned by the debtor, is exempt from judgment, attachment or distress for rent;

\*    \*    \*    \*    \*    \*

(b) The debtor's right to receive, or property that is traceable to:

\*    \*    \*    \*    \*    \*

(3) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor or a dependent of the debtor ...

As pointed out by the bankruptcy court, this portion of the statute is patterned after the federal exemption found in 11 U.S.C. § 522(d)(11)(C),[4] and is not ambiguous. Standing alone, nothing in subsection (h)(3) imposes either a limit on the duration support payments are exempt or a limit on the right to assert the exemption. However, an amendment added by the General Assembly in December 1983 throws a wrench into the works:

For purposes of this subsection (h), *a debtor's right to receive an award or payment shall be exempt for a maximum of 2 years after the debtor's right to receive such award or payment ac-*

*crues; property traceable to such an award or payment shall be exempt for a maximum of 5 years after such award or payment accrues; and such an award or payment shall be exempt only to the extent of the amount of the award or payment, without interest or appreciation from the date of such award or payment.* (Emphasis added).

Unfortunately, the import of this provision does not immediately jump off the page. We must therefore utilize other less precise methods of ascertaining what the General Assembly had in mind when it enacted this amendment. Appellants argue persuasively that the Illinois legislature intended to cut back on the amount that is exempt by limiting it to two years reasonable support. Although there is no legislative history on this particular section or case law interpreting it, several points do lend support for appellants' position.

First, the appellants' position fits within the overall policy of the Bankruptcy Code: the statutory scheme is narrowly tailored to provide the debtor a fresh start, arguably by exempting only those amounts necessary to keep the bankrupt off the public roles until such time as she is able to support herself. Under this theory, placing a two-year limit on insurance payments for support makes sense. It provides a reasonable period of time for the debtor to rehabilitate after the death of one on whom the debtor was a dependent.

In contrast, there is no apparent reason why the General Assembly would insert a special two-year statute of limitations limited solely to subsection (h). Moreover, were a statute of limitations intended, it is unlikely that the legislature would have stated that the right to receive payment is *exempt* for a two-year period. Thus, appellants' position does fit neatly into the overall statutory scheme.

Nevertheless, other aspects of the exemption statute's overall legislative history weigh in favor of the bankruptcy court's decision. State legislatures have viewed

---

4. Pursuant to 11 U.S.C. § 522(b)(1), the Illinois legislature chose to "opt out" of the federal exemption scheme and restrict Illinois residents to exemptions granted by Illinois law. Ill.Rev. Stat. ch. 110, ¶ 12–1201.

debtors more favorably than the common law. At common law, *all* of the debtor's property was subject to execution. *Logston*, 103 Ill.2d at 279, 82 Ill.Dec. at 638, 469 N.E.2d at 172. In order to alleviate the harshness of this rule and to prevent a debtor from being completely deprived of the means of supporting his family and from becoming a public charge, the Illinois legislature enacted the predecessor to § 12–1001, exempting a number of types of property from attachment or execution. Then came the Federal Bankruptcy Reform Act of 1978, which increased the relief available to debtors by granting certain federal exemptions. Finally, the Illinois legislature again expanded the available personal property exemptions by increasing the types of property and the amounts of property that could be exempted. *See In re Matter of Barker*, 768 F.2d 191, 195–96 (7th Cir.1985).

Given this history of continued expansion in the protection afforded debtors, the Court cannot, in the absence of a more specific statement by the Illinois legislature, construe the 1983 amendment as suddenly backing off this trend.[5] In *Barker*, the Seventh Circuit noted that:

> This circuit and the courts in Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors. * * * This clear legislative intent to grant protections to debtors and the courts' liberal construction of exemption statutes convince us that in a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.

768 F.2d at 196. This reasoning is equally applicable to the case at bar. Obviously, the Illinois legislature meant the amendment to subsection (h) to have some effect.

But until the Illinois General Assembly more clearly manifests an intent to cut back on the duration support payments are exempt under (h)(3), we decline to do so. As the law now stands, the absence of legislative history on the amendment, the ambiguity of the statutory language, and well established rules of construction all counsel against cutting against the trend toward allowing a complete exemption for those amounts necessary for the debtor's support.

We therefore AFFIRM the decision of the bankruptcy court, and remand for the conclusion of the pending bankruptcy proceeding.

---

5. The scarcity of substantive Senate debates on this amendment also supports our conclusion. In fact, during the final reading of Senate Bill 1247, which enacted the amendment, Senator Berman expressed concern that someone "besides staff" should check the bill to confirm that no *substantive* change in current law was effected. Senator Bruce responded that "both sides" had looked at the bill, and confirmed that no substitute change was intended. Hearings on S.B. 1247, 183rd General Assembly (1983).