In re Linda Eleanor JACKSON, Debtor.

Bankruptcy No. 88–91076.

United States Bankruptcy Court,
C.D. Illinois,
Danville Division.

Feb. 8, 1989.

Kenneth C. Meeker, Danville, Ill., Trustee.

Robert G. Kirchner, Champaign, Ill., for debtor.

## OPINION

GERALD D. FINES, Bankruptcy Judge.

The matter before this Court is the Trustee's Objection to Debtor's Claim of Exemption in life insurance proceeds to the extent of $16,000. Hearing was held on January 10, 1989. The facts adduced at the hearing are as follows:

Debtor, Linda Eleanor Jackson, was the sole beneficiary to a life insurance policy on the life of her husband, who died on May 20, 1987. In approximately July 1987, Debtor received $40,000 in life insurance proceeds. In August 1987, Debtor sold the house in which she was living for $69,000. She used some of the proceeds from the sale of that home in addition to $30,000 from the life insurance proceeds as a down payment on her present residence located at 906 South Walnut, in Mahomet, Illinois. Her present home was purchased in August 1987, for $65,000.

Subsequent to the purchase of her present residence, Debtor placed a second mortgage on her residence with the Commercial Bank of Champaign in the amount of $16,000. As a result of the first and second mortgages, the Debtor's equity in her present residence is approximately $16,000. Debtor testified that she took out the second mortgage in the amount of $16,000 in order to invest that money in a business venture operated by a former boyfriend and, as a result, the entire $16,000 was lost.

As of the date of the hearing, Debtor was working as a waitress earning $300

per month. She has a G.E.D., but no college education and is 42 years old. Debtor's fifteen year old child lives with her. Debtor also receives additional monthly income in the form of social security, which will terminate in March 1989, pension income in the amount of $160, workers compensation in the amount of $232.65, and child support of $150. Debtor testified that, absent the social security income that will terminate in March 1989, she has a monthly income of approximately $1,400.

In regard to her monthly expenses, Debtor testified that her monthly mortgage payments on her residence total $514.33, plus utilities of $281 per month. She has additional monthly expenses of $72.06 for real estate taxes, $100 for insurance, $60 for transportation, $400 for food, $200 for clothing, and $30 for miscellaneous and laundry. Debtor testified that her monthly expenses total approximately $2,200 per month.

Among the exemptions listed in Debtor's Bankruptcy Schedule B–4 is an exemption in her homestead in the amount of $7,500 and an exemption in the amount of $16,000 for life insurance proceeds. On December 2, 1988, the Trustee filed a Report of Exempt Property in which he stated that he objects to the claim of exemption in life insurance proceeds to the extent of $16,000 on the basis that the Schedule B–4 fails to specify the provision of the Illinois Code of Civil Procedure relied upon for said claim of exemption and further that no subsection of Section 12–1001 would exempt the proceeds of insurance which have now been converted to other forms of property.

In support of Debtor's exemption in life insurance proceeds, Debtor cites two alternative sections of the Illinois Exemption Statute. Debtor argues that either Section 12–1001(f) or 12–1001(h)(3) supports Debtor's claim of exemption in the life insurance proceeds that were used as payment toward the purchase price of her home.

The issue for the Court to decide is whether Debtor's claim of exemption in life insurance proceeds is proper under either Section 12–1001(f) or 12–1001(h)(3). More specifically, the Court must decide whether conversion of the life insurance proceeds to a portion of the purchase price on Debtor's residence caused the life insurance proceeds to lose their exempt status.

The Court notes that, according to Debtor's testimony, her equity in her home as of the date of the hearing was approximately $16,000. In her Bankruptcy Schedule B–4, Debtor has claimed a homestead exemption of $7,500, which is clearly proper under Section 12–901 of Chapter 110 of the Illinois Revised Statutes. Therefore, the actual amount of equity that is subject to the present dispute is $8,500. It is for the Court to decide whether the $8,500 is exempt as life insurance proceeds under either subsection (f) or subsection (h)(3) of Chapter 110, Section 12–1001, Illinois Revised Statutes.

█ Illinois Revised Statutes, Chapter 110, Section 12–1001(f), states as follows:

"(f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not;"

Debtor cites *In re Vogel*, 78 B.R. 192 (N.D.Ill.E.D.Bankr.1987) in support of her argument that subsection (f) of Section 12–1001 applies in this case. In *In re Vogel*, the debtor claimed an exemption pursuant to subsection (f) in life insurance policies that were placed in an IRA and Keough Plan. The insurance policies were payable to the debtor's wife and children and were placed in the IRA and Keough Plan for legitimate tax reasons. *Id.* at 194. The court, in *In re Vogel*, found that the life insurance policies that were placed in the IRA and Keough Plan were exempt insurance policies under Section 12–1001(f) of the Illinois Code.

*In re Vogel* is distinguishable from this case because *In re Vogel* did not involve

life insurance proceeds that were converted to another form of property. The actual insurance policies were held in the IRA and Keough Plan in *In re Vogel* and, therefore, were not actually converted to another form of property. In this case, the Court is presented with life insurance proceeds that were used to pay a portion of the purchase price of a home. The Debtor has presented no cases, and the Court has not found any, that have found that Section 12–1001(f) covers life insurance proceeds that have been converted to another form of property. The Court is not convinced that the exemption for life insurance proceeds is authorized by Section 12–1001(f), because the life insurance proceeds were converted to another form of property, and Section 12–1001(f) does not specifically address that situation.

■ However, the Court is convinced that Section 12–1001(h)(3) does permit the Debtor in this situation to exempt the $8,500 of her equity as life insurance proceeds.

Section 12–1001(h)(3) states as follows:
"(h) The debtor's right to receive, or property that is traceable to:
(3) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor or a dependent of the debtor;"
Section 12–1001(h)(3) is patterned after the federal exemption found in 11 U.S.C. § 522(d)(II)(C). The language of 12–1001(h)(3) specifically covers property that is traceable to a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent. The only remaining issue under subsection (h)(3) is whether the $8,500 equity is "reasonably necessary for the support of the debtor or a dependent of the debtor."

■ Section 12–1001(h)(3) allows Debtor an exemption in that portion of the $8,500 of equity that is traceable to the life insurance proceeds and reasonably necessary for Debtor's support. The Court is mindful that to allow Debtor to exempt life

insurance proceeds greater than the extent reasonably necessary for support would provide her a windfall. *See: In re Poyner*, 68 B.R. 919, 911 (Bankr.N.D.Texas 1987). If the full $8,500 is reasonably necessary for the support of the Debtor, then she can exempt that amount under 12–1001(h)(3). *See: Id.* The Court notes that the question of whether the $8,500 equity is reasonably necessary for Debtor's support is a close one. If the Debtor was forced to sell her home, thereby making $8,500 available to the unsecured creditors, she could use the money that she presently pays on her mortgages for rent, and would certainly be able to rent a place to live for herself and her daughter. On the other hand, the Court has reviewed the cases and is in agreement with the courts that have found that the obligation to maintain and support a family includes the obligation to keep a roof over their heads. *See: Matter of Hendricks*, 11 B.R. 48, 50 (Bankr.W.D.Missouri 1981); citing *Poolman v. Poolman*, 289 F.2d 332, 335 (8th Cir.1961).

The personal property exemption statutes in Illinois are to be liberally construed in order to protect debtors and, where an exemption statute might be interpreted either favorably or unfavorably toward the debtor, the statute should be interpreted in favor of the debtor. *Matter of Barker*, 768 F.2d 191, 196 (7th Cir.1985); *In re Whalen*, 73 B.R. 986, 989 (C.D.Ill.1987); *In re Allman*, 58 B.R. 790, 793 (Bankr.C.D.Ill.1986). Because this is a close case, this Court will interpret Section 12–1001(h)(3) liberally in favor of the Debtor, and, therefore, finds that the $8,500 of Debtor's equity is exempt as property traceable to life insurance proceeds that are reasonably necessary for her support under Section 12–1001(h)(3).

By allowing Debtor an exemption under 12–1001(h)(3) in the amount of $8,500, in addition to her homestead exemption of $7,500, this Court is thereby allowing Debtor to stack two exemptions in one item of property, her residence. Other courts have allowed stacking of exemptions in a motor vehicle, as in *Matter of Barker*, 768 F.2d 191 (7th Cir.1985). In *Matter of Barker*, the Seventh Circuit held that the phrase

"any other property" in the wild card exemption permitted debtor to use the $2,000 wild card exemption to exempt the equity remaining in his automobile after he used the $1,200 automobile exemption.

Likewise, it has been held in Illinois that a debtor may claim a $750 tools of trade exemption under Section 12–1001(d) and may exempt his excess equity pursuant to the wild card exemption provision. *See: In re Allman,* 58 B.R. 790.

By allowing Debtor a total exemption of $16,000 in her home, the Court hopes to prevent her from being deprived of the means of supporting herself and her child and to enhance her opportunity to be self-sufficient. *See: In re Allman,* 58 B.R. 790, 793 (Bankr.C.D.Ill.1986), citing *Barker,* 768 F.2d at 195.

It is therefore ordered that the Trustee's objection to claim of exemption in life insurance proceeds is *DISALLOWED.*

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.