**In re Gordon H. MOFFAT, Debtor.**

**Bankruptcy No. LA 88–20019–KM.**

United States Bankruptcy Court,
C.D. California.

Oct. 31, 1989.

Richard M. Moneymaker, Moneymaker & Kelley, Los Angeles, Cal. for debtor.

David R. Haberbush, Roquemore, Pringle & Moore, Los Angeles, Cal., Chapter 7 trustee.

## OPINION

KATHLEEN P. MARCH, Bankruptcy Judge.

## I.

## FACTS

In this contested matter, the Chapter 7 Trustee, David Haberbush, filed a motion pursuant to Bankruptcy Rule 4003(b), objecting to debtor's claimed exemptions under 11 U.S.C. § 522(b)(1). Debtor filed opposition responding to the Trustee's objections both on legal and factual grounds. Pursuant to Rules 121(2) and 111(1)(k) of the Local Rules of the United States Bankruptcy Court for the Central District of California, the Court ordered the parties to prepare a pre-trial order and scheduled this matter for an evidentiary hearing. After the evidentiary hearing, the parties were ordered to submit closing briefs.

Debtor Gordon H. Moffat, an orthodontist, filed his Chapter 7 petition on September 22, 1989. Along with his petition, debtor filed a list of property claimed exempt under 11 U.S.C. § 522(b)(1), as required by Bankruptcy Rule 4003(a). Among the property claimed exempt by debtor were (1) a $45,000.00 homestead in his personal residence located at 4927 El Sereno St, La Crescenta, California, and (2) an unspecified interest in a $190,000.00 single premium deferred annuity.[1] Debtor claimed these exemptions pursuant to California Code of Civil Procedure §§ 704.720 and 704.100 respectively.[2]

In preparation for filing his present petition,[3] debtor engaged in various pre-bankruptcy transactions. On February 5, 1988, debtor along with his spouse, created "The Gordon H. Moffat and Barbara B. Moffat Living Trust" (herein after referred to as the "Living Trust"), naming themselves along with their children as trust beneficiaries.[4] On the same day, debtor transferred title to his personal residence to the Living Trust. On February 28, 1988, debtor borrowed $300,000.00 against his home, utilizing $190,000.00 of the proceeds to purchase a single premium preferred annuity, naming himself as the annuitant and his spouse as the contingent beneficiary. Subsequently, debtor transferred his ownership interest in the annuity to the Living

---

1. There are two types of property interests in an annuity. There is the ownership interest, and there is the interest in the benefit payments to be received from the annuity called the beneficial interest. California Code of Civil Procedure § 704.100 (West 1987) exempts the ownership interest in certain kinds of annuities and the beneficial interest in certain other kinds of annuities. Debtor's B–4 schedule fails to specify which interest debtor is claiming as exempt. Given debtor's failure to distinguish between the ownership interest and the beneficiary interest in the annuity, this court must construe debtor's schedule as claiming an exemption in both the ownership and beneficiary interest in the subject annuity.

2. Pursuant to the B–1 schedules filed herein, debtor also claims an exemption in various life insurance policies with "Executive Life and UPI" under California Code of Civil Procedure § 704.710 (West 1987). The trustee's initial moving papers raised an objection to debtor's claim that these policies were exempt. The

trustee, however, abandoned this objection by failing to include it in the pre-trial order submitted by the parties and ultimately approved by the court. To the extent the pretrial order supercedes the trustee's initial moving papers as a summation of the trustee's objections to debtor claim of exemption, there is no pending issue before the court regarding the propriety of debtor's claim to an exemption in the subject life insurance policies.

3. This is debtor's second bankruptcy filing. Debtor filed his first petition approximately ten years ago with the assistance of present bankruptcy counsel, the firm of Moneymaker & Kelly. Debtor testified that he filed his present petition primarily for the purpose of discharging a debt arising from a $300,000.00 malpractice judgment entered against him.

4. Specifically, debtor holds a 12% interest, debtor's wife holds a 48% interest, and debtor's four children hold a 20% interest as beneficiaries of the living trust.

Trust. Debtor testified at the evidentiary hearing that he and his spouse created the Living Trust[5] and purchased the $190,-000.00 annuity on the advice of counsel in order to keep his creditors from reaching these assets by maximizing allowable exemptions.

The Trustee objects to debtor's claiming a homestead exemption on the ground that pursuant to U.S.C. § 522(b) debtor cannot claim an exemption in an asset which is not property of the estate. The trust document admitted into evidence confirms the trustee's allegation that title to the residence is held by the Living Trust. The trust document, however, reveals that debtor and his spouse, and consequently the bankruptcy estate, hold various legal interests in the trust affecting title to the subject residence, including (1) the right as trustor(s) to revoke the trust in whole or in part, and (2) the right as beneficiaries under the trust to live on the property during their life time without obligation to pay rent.

The Trustee also objects to debtor's claimed exemption in the ownership interest of the $190,000.00 single premium deferred annuity on the ground that, pursuant to California Code of Civil Procedure § 704.100(a), debtor is not entitled to claim as exempt his ownership interest in a "matured" annuity. In addition, the trustee objects to debtor's claimed exemption in the beneficiary interest of the $190,000.00 annuity policy on the ground that pursuant to California Code of Civil Procedure § 704.100(c) debtor is not entitled to claim an exemption in annuity benefits which are not "reasonably necessary for the support of the judgment debtor and spouse and dependents of the judgment debtor."

The annuity policy admitted into evidence reveals that debtor purchased the subject annuity for a single premium of $190,-000.00, naming himself both as owner and annuitant under the policy. Debtor named his spouse as the contingent beneficiary. Pursuant to the terms of the policy, debtor as the annuitant, will receive forty quarterly "payments-certain" of $4,370.00 which commenced on October 1, 1988 (i.e., nine days after debtor filed for bankruptcy). The annuity provides that if the annuitant dies before receiving the forty "payments-certain," the contingent beneficiary, Mrs. Moffat, will receive the remaining payments.

Debtor is a practicing orthodontist. Not including any income from the annuity, debtor and his spouse receive a combined monthly gross income of $5,600.00 earned by debtor, and $600.00 earned by debtor's wife, plus Social Security benefits. From these gross amounts debtor's take home pay is $4,464.00 and his wife's take home pay is $432.00. (Debtor's testimony, plus Schedule of Debtor's Current Income and Current Expenditures to his Bankruptcy Petition, received in evidence at the hearing.) Debtor testified that $5,000.00 of his monthly $5,600.00 gross income is salary from his orthodontics practice, paid through his wholly owned and operated corporation, Dr. Gordon H. Moffat, a Professional Corporation. Debtor testified this wholly owned corporation grosses approximately $400,000.00 a year. Debtor sees 200–300 patients a month in his practice. In addition to the income from his wholly owned corporation, debtor testified that he receives $1,000.00 to $1,500.00 a month as consulting fees for consulting for an insurance company, the American Guild of Orthodontics. In addition to the earnings from his practice and consulting, debtor testified that he also receives $800.00 a month of Social Security payments. No

---

5. Throughout his testimony at the evidentiary hearing, debtor referred to the trust created on February 5, 1988, in anticipation of filing his present bankruptcy petition as the "family trust." The trust document admitted into evidence, however, is captioned "The Gordon H. Moffat and Barbara B. Moffat *Living Trust*" (emphasis added). The living trust consists of three trusts one of which is entitled a "family trust." However, it does not appear from the trust document that the home in question was transferred into the family trust; rather the property was transferred into the Living Trust. Article I of the trust document provides that "This Trust and all trusts derived herefrom shall be known as the GORDON H. MOFFAT AND BARBARA B. MOFFAT LIVING TRUST." Accordingly, this court will refer to the trust in question as the "living trust" rather than the "family trust."

evidence was submitted that debtor is unable to continue carrying on his practice for the foreseeable future. Moreover, debtor received an offer to purchase one part of his practice for $50,000.00.

Before mortgaging his home to purchase the subject annuity, debtor had a monthly mortgage payment of only $1,600.00. After borrowing against the house to purchase the $190,000.00 annuity, debtor's monthly mortgage payment is $2,600.00. Debtor maintains he needs the $4,370.00 quarterly annuity payment in order to service the debt on his home.

Lastly, in his closing brief, the trustee for the first time raises the argument that debtor's claim of exemption should be disallowed on the ground that debtor's purchase of the annuity constitutes a fraudulent conveyance under California law.

## II.

### ISSUES PRESENTED

This contested proceeding presents the following issues:

A. Whether debtor is entitled to claim a $45,000.00 homestead exemption in his principal residence, pursuant to California Code of Civil Procedure § 704.720, when title to the dwelling is held in a living trust of which both debtor and his spouse are trustors and beneficiaries;

B. Whether debtor is entitled to claim an exemption in either the ownership or beneficiary interest in a $190,000.00 single premium deferred annuity, pursuant to California Code of Civil Procedure § 704.100, regardless of whether the annuity is found to be "matured" or "unmatured;" and,

C. Whether debtor's claim of exemption in the $190,000.00 single premium deferred annuity can be disallowed on the ground the purchase of the annuity constitutes a fraudulent conveyance.

**6.** For a discussion of the distinction between the "automatic" and the "declared" homestead see *In re Knudsen,* 80 B.R. 193 (Bankr.C.D.Cal. 1987).

**7.** The definition of dwelling under this automatic homestead article, Article 4, is different from

## III.

### ANALYSIS

The United States Bankruptcy Code permits states to opt out of the federal exemption statutory scheme set forth in 11 U.S.C. § 522(d). Bankruptcy Code § 522(b)(1). In enacting California Code of Civil Procedure § 703.130, California opted out of the federal exemption scheme relegating debtor to whatever exemptions are provided under state law. Consequently, substantive issues regarding the allowance or disallowance of a claimed exemption are governed by state law in California. However, the Bankruptcy Rules set forth the procedural framework for filing both a list of property claimed as exempt and objections to claimed exemptions. Bankruptcy Rule 4003(a) and (b). In a proceeding under Bankruptcy Rule 4003(b), the objecting party has the burden of proving that debtor is not entitled to the claimed exemption. Bankruptcy Rule 4003(c).

A. Debtor is Entitled to a $30,000.00 Homestead Exemption Pursuant to California Code of Civil Procedure § 704.720

Debtor claims an "automatic" [6] homestead exemption in his personal residence pursuant to California Code of Civil Procedure § 704.720 in the amount of $45,000.00. In relation to the automatic homestead exemption, a "homestead" is defined as the "... the principal *dwelling* ... in which the judgment debtor or the judgment debtor's spouse resides...." California Code of Civil Procedure § 704.710(c) (West 1987). (Emphasis added). For the purposes of the automatic homestead exemption, California Code of Civil Procedure § 704.710(a)(1) defines a "dwelling" as including "[a] house together with the outbuildings and the land upon which they are situated." [7] The

the definition of dwelling under C.C.P. § 704.910 (West 1987), the declared homestead article, Article 5. The declared homestead article, California Code of Civil Procedure § 704.910 (West 1987), gives a more restrictive definition of dwelling as follows:

amount of a homestead is determined by California Code of Civil Procedure § 704.730(a)(1) which provides debtors with a $30,000.00 homestead unless a debtor comes within subsection (a)(2) or (a)(3). Debtor herein alleges he comes within subsection (a)(2) which provides a $45,000.00 homestead:

"[I]f the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead member of a family unit and there is at least one member of the family unit who own no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor." California Code of Civil Procedure § 704.730(a)(2) (West 1989).

Debtor argues he is entitled to the $45,000.00 homestead exemption on the ground that both he and his spouse utilize the subject dwelling as their principal residence and both he and his spouse hold as an interest in the subject property as trustors, trustees and beneficiaries under the subject trust. Debtor points out that California Code of Civil Procedure § 704.720 does not limit the right to claim a homestead exemption to individuals who have an "ownership" interest in the subject property.[8]

1. The Bankruptcy Estate Holds Various Legal Interests in the Subject Dwelling

■ The Trustee objects to debtor's claim to a $45,000.00 homestead · on the ground that debtor is not entitled to claim a homestead exemption in a dwelling which is not property of the estate. 11 U.S.C. § 522(b) provides that:

[n]otwithstanding section 541 of this title, an individual debtor *may exempt from the property of the estate* the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection." 11 U.S.C. § 522(b) (Emphasis added).

The trustee maintains that because debtor transferred title to the subject residence to the Living Trust before filing his bankruptcy petition, the residence is not property of the estate pursuant to 11 U.S.C. § 541(a) from which debtor can claim an exemption.[9] The trustee's contention that debtor cannot claim a homestead exemption in the subject dwelling because legal title to the property is not held by the bankruptcy estate is without merit. While title to the dwelling is in the Living Trust, as the trustee asserts, debtor holds various "legal interests" in the subject dwelling as a trustor and beneficiary of the living trust.[10]

11 U.S.C. § 541(a)(1) provides that, *inter alia,* "... a [bankruptcy] estate is comprised of ... all legal or equitable interests of the debtor...." Debtor's interest as a trustor and beneficiary under the Living Trust, among other things, all became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) upon the filing of debtor petition. Debtor is entitled to claim an exemption in either of these legal interests.

---

"'(c) 'Dwelling' means any interest in real property ... but does not include ... the interest of the beneficiary of a trust." California Code of Civil Procedure § 704.910 (West 1987).

Thus a debtor whose sole interest in a dwelling as a beneficiary of a trust could not claim a declared homestead exemption regarding that dwelling, but could claim an automatic homestead exemption regarding that dwelling, since "dwelling" as defined in the automatic homestead article, California Code of Civil Procedure § 704.710 (West 1987), does not contain the restriction regarding beneficiaries of trusts that the declared homestead exemption, California Code of Civil Procedure § 704.910 (West 1987) contains.

8. As noted in footnote 7, *Supra*, debtor is correct that the right to claim an "automatic" homestead exemption is *not* limited to individuals who have an ownership interest in the dwelling.

9. Debtor argues Trustee's contention is without merit because exempt property, by its very nature, never becomes property of the estate. Debtor's contention, however, is in error "[e]ven exempt property must initially be regarded as property of the estate and then claimed and distributed as exempt." (*Citations omitted) In re Poynor* 68 B.R. 919, 921 (Bankr.N.D.Tex.1987).

10. Note, debtor also holds an "equitable interest" in the subject property as trustee of the Living Trust.

Pursuant to debtor's interest as trustor in the "revocable" living trust, the bankruptcy estate holds a "contingent reversionary interest" in the subject dwelling. The bankruptcy trustee—standing in debtor's place as trustor of the Living Trust—can, in his discretion, revoke the trust in whole or in part, reverting title in the residence back to the bankruptcy estate.[11] Debtor claims a homestead in this "contingent reversionary interest" and the trustee has failed to produce any legal authority for the proposition that a homestead cannot be claimed in such an interest. The trustee has failed to meet his burden of proving a homestead exemption claim should be disallowed. Consequently, this court must find that debtor is entitled to claim a homestead exemption in his principal dwelling even if debtor's sole interest in the was a "contingent reversionary interest."

Furthermore, pursuant to debtor's interest as a beneficiary under the Living Trust, debtor and his spouse are entitled to reside in the subject dwelling "without an obligation to pay rent" during their life time, (i.e., debtor holds a "life estate"). Upon the filing of debtor's petition, however, debtor's life estate transferred to the bankruptcy estate, (i.e., the bankruptcy estate holds an "estate pur altra vie").[12] Debtor claims a homestead exemption in this "life estate" and the trustee has failed to produce any legal authority for the proposition that a homestead exemption cannot be claimed in such an interest. The trustee has failed to meet his burden of proving that debtor's claim to a homestead exemption should be disallowed. Consequently, this Court holds that debtor is entitled to claim a homestead exemption in his principal dwelling notwithstanding the fact debt-

or's sole interest in the dwelling may be a "life estate."

### 2. Debtor Does Not Qualify for a $45,000.00 Homestead Exemption

However, debtor is not entitled to claim a homestead exemption in the amount of $45,000.00. Pursuant to California Code of Civil Procedure § 704.730(a)(1) debtor is only entitled to a $30,000.00 homestead exemption, unless debtor comes with subsection (a)(2), i.e., that is "... there is at least one member of the family unit *who owns no interest* in the homestead or *whose only interest in the homestead is a community property interest* ..." (Emphasis added). The evidence presented at the evidentiary hearing, however, reveals that there is no member of a family unit who holds either "no interest" or simply holds a "community property interest" in the dwelling. Debtor and his spouse live in the subject property alone and both debtor and his spouse hold separate interest in the dwelling both in the form of "contingent reversionary interests" and "life estates." Consequently, debtor is only entitled to a homestead exemption in the subject dwelling in the amount of $30,000.00. The trustee's objection is overruled regarding debtor's right to claim a homestead exemption in the dwelling, but is partially sustained regarding the amount of the exemption, since the proper amount of the exemption is $30,000.00, not the $45,000.00 claimed.

### B. Debtor May Not Validly Exempt Either an Ownership or a Beneficiary Interest in the $190,000.00 Single Premium Deferred Annuity

Debtor claims an exemption in both the ownership and beneficiary interests under

---

11. If the trustee revoked the Living Trust (transferring title of the residence from the living trust to the bankruptcy estate), the bankruptcy estate would hold legal title to the dwelling subject to a first deed of trust in the sum of $300,000.00, and an abstract of judgement in the sum of $300,000.00. Consequently, if the bankruptcy trustee reverted title in the dwelling back into the bankruptcy estate, there would be no equity from which debtor could claim a homestead exemption unless debtor avoided the judgement lien pursuant to 11 U.S.C. § 522(f).

12. Theoretically, the bankruptcy trustee could sell debtor's life estate in the subject property, and debtor would be entitled to claim a homestead exemption from the proceeds of sale. As a practical matter, however, debtor's life estate has little if any monetary value. As noted earlier, debtor's residence is held subject to a first deed of trust in the sum of $300,000.00 and judicial lien in the sum of $300,000.00.

the $190,000.00 annuity policy pursuant to California Code of Civil Procedures § 704.100. California Code of Civil Procedure § 704.100 provides:

> (a) *Unmatured* life insurance policies (including endowment and *annuity policies*), but not the loan value of such policies, are exempt without making a claim. (Emphasis added).

> \* \* \* \* \* \*

> (c) Benefits from *matured* life insurance policies (including endowment and *annuity policies*) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor. California Code of Civil Procedure § 704.100 (Emphasis added).

Debtor argues that the quarterly payments to be made under the annuity policy here in issue are exempt under California Code of Civil Procedure § 704.100(a) on the theory that the annuity policy is *unmatured.* Debtor argues in the alternative (and inconsistently) that if the quarterly payments to be paid under the annuity are *matured* rather than unmatured, the $4,370 quarterly payments should still be held exempt because these $4,370 payments are "reasonably necessary" for the support of the debtor Moffat and his spouse.

### 1. *The Subject Annuity Is "Matured"*

■ In order to determine whether debtor can claim an exemption in *any interest* in the annuity (either the ownership or the beneficiary interest), this Court must determine whether the subject annuity is "matured" or "unmatured." The annuity in question is payable in quarterly payments over a ten year period. The payout period commenced in October of 1988. Neither the parties nor the court were able to locate any dispositive state or federal court authority on point addressing the question of whether an annuity whose payment is contingent *solely* on the passage of time is "matured" or "unmatured." However, logic dictates holding that the annuity in question was mature when purchased, since no further act of any kind was necessary on the part of debtor, or any other person, for debtor to be entitled to the 40 payments.

This is unlike the situation where a life insurance policy is the instrument in question. In the case of a life insurance policy, the insured life has to die before the insurance company is obligated to pay. Here debtor does not have to die, or take any other act, and there is no insured life. Rather, the annuity company was contractually obligated to pay the 40 payments as soon as the annuity policy was purchased and the $190,000 purchase price paid, with the 40 payments to start on the date chosen by debtor at the time debtor purchased the annuity. The fact that a debtor may choose an annuity contract where the stream of 40 payments starts a week or two *after,* rather than a week or two *before,* he files his bankruptcy petition cannot rationally be deemed to make the policy unmatured as of the date of filing. After all, the *right* to receive the 40 payments arises the day the annuity is purchased, a date which is prepetition. *Black's Law Dictionary* defines "maturity" as "the date at which an obligation ... becomes due." Black's Law Dictionary 883 (5th ed. 1979). Here, the annuity company's duty to pay arose on the date the annuity policy was purchased. Thus, the obligation was owed, i.e., "became due," on the date the annuity was purchased, despite the fact that the debtor delayed the time the payments would be made to a later date convenient to him. Accordingly, this Court holds that the subject single premium deferred annuity was "matured," when purchased, as the term "matured" is used in California Code of Civil Procedure § 704.100.

### 2. *The Benefit Payments Are Not Reasonably Necessary to Support the Debtor and His Spouse*

■ In light of this Court's holding that the subject annuity has "matured," debtor cannot validly claim an exemption in any interest under the annuity under California Code of Civil Procedure § 704.100(a) (governing "unmatured" annuities). However, debtor is entitled to claim an exemption in

the annuity to the extent provided for by California Code of Civil Procedure § 704.100(c) (governing "matured" annuities). Pursuant to subsection (c), debtor is entitled to claim an exemption in the beneficiary interest of a matured annuity to the extent the benefit payments from the annuity are "reasonably necessary" for the support of the judgment debtor and the spouse and dependents of the judgment debtor. (California Code of Civil Procedure § 704.100(c) is quoted *supra.*)

Based on the evidence presented, this Court finds that none of the forty quarterly benefit payments are "reasonably necessary" for the support of debtor, his spouse, or his dependents. As set forth *supra,* debtor receives a gross monthly income of $5,600.00 a month from his orthodontics practice and consulting. Should he wish at some future date to stop practicing, debtor can reasonably be expected to sell his practice to finance his retirement. He testified he had already received an offer to sell a certain part of his practice. No evidence was presented that the debtor is unable to continue working. At the time of trial he was practicing actively. Debtor also testified that he receives social security payments of approximately $800.00 a month. In addition to debtor's earnings, debtor's spouse, who also resides in the residence, receives a gross salary of $600.00 per month. (Debtor's testimony and Schedule of Current Income and Current Expenditures to his Bankruptcy Petition, received in evidence).

■ The fact that debtor's mortgage payments on his residence increased because he refinanced his residence to purchase the annuity does not mean that the annuity payments are "reasonably necessary" to support the debtor because his mortgage payments have gone up. Annuity payments cannot be held to be reasonably necessary to support a debtor merely because a debtor immediately before bankruptcy voluntarily takes on additional debts. A debtor cannot make proceeds of an annuity policy "reasonably necessary" for his support, and therefore unavailable to be used to pay his creditors, merely because the debtor goes out and increases his debts in preparation for filing bankruptcy. To do so would reward debtors who borrow as much as possible immediately before bankruptcy, while penalizing debtors who do not do so. The measure of "reasonably necessary" is not how much debt the debtor can run up, but the objective standard of how much a debtor reasonably needs to live.[13] If debtor has excessively incumbered his residence with consensual liens, he may lose the residence, or he may use the $7,900.00 gross monthly income he and his wife have from their work and other sources to continue paying the higher monthly mortgage.

### 3. If the Subject Annuity is Deemed "Unmatured", Debtor is Still Not Entitled to Claim an Exemption in the Beneficiary Interest

■ Given the lack of dispositive state or federal court authority on the question of whether an annuity has "matured," this Court will now, in the alternative, address the question of what exemption, if any, debtor would be entitled to claim if the policy were *assumed, arguendo* (and contrary to this Court's holding), to be "unmatured." If the annuity is assumed, *arguendo,* to be "unmatured," debtor cannot claim an exemption in any interest under the annuity under California Code of Civil Procedure § 704.100(c) (governing "matured" annuities). However, debtor would be entitled to claim an exemption in any interest in the policy provided for by California Code of Civil Procedure § 704.100(a) (governing "unmatured" annuities). Subsection (a), quoted *supra,* states: "[u]nma-

---

**13.** Though there does not appear to be a case directly on point, see by analogy California Code of Civil Procedure § 704.020(b) (West 1989), which defines when an item of personal property is "ordinarily and reasonably necessary" for the debtor as being the objective standard of: "(1) The extent to which the particular type of item is customarily found in a household. (2) Whether the particular item has extraordinary value as compared to the value of items of the same type found in other households." See *In re Lucas,* 77 B.R. 242 (9th Cir.B. A.P.1987).

tured ... annuity policies ... are exempt." California Code of Civil Procedure § 704.100(a) (West 1987). There is a question, however, as to whether this language or subsection exempts the "ownership interest" in an annuity, or the "beneficiary interest" of an annuity, or both the ownership and the beneficiary interest.

The Court and the parties found no state court cases, and only one federal case, construing California Code of Civil Procedure § 704.100(a).[14] That case is the Ninth Circuit case of *Woodson v. Fireman's Fund Insurance Company, (In re Woodson)*, 839 F.2d 610 (9th Cir.1988), where the Ninth Circuit stated:

> "Both federal and California law fully exempt the ownership interest in the unmatured life insurance policy and exempt the loan value of the policy up to $4000. See 11 U.S.C. § 522(D)(7)–(8); Cal.Civ. Proc.Code §§ 703.140(b)(7)–(8); 704,-100(a)–(b). Both only partially exempt the proceeds of matured life insurance policies based on the needs of the debtor. See 11 U.S.C. § 522(d)(11)(C) (1892) (proceeds of life insurance contract insuring life of individual of whom debtor was a dependent at insured's death are exempt to the extent reasonably necessary for the support of the debtor and any dependents of the debtor.) Cal.Civ.Proc. Code § 704.100(c)."

*Woodson*, 839 F.2d at 618, Footnote 12 (Emphasis added).

The Ninth Circuit in *Woodson* recognized the difference between the ownership interest and the beneficiary interest in a life insurance policy, concluding that "[w]e must treat the two interests disparately because the Bankruptcy Code does so." 839 F.2d at 618; *See In re Poynor*, 68 B.R. 919, 923 (Bankr.N.D.Tex.1987) ("[t]his distinction between the ownership rights and beneficiary right appears to be more consistent with the intent of the Bankruptcy Code").

Debtor argues that under the *Woodson* case, the payments to be received pursuant to an unmatured life insurance policy are completely exempt. However *Woodson*, as just quoted, does not say this. *Woodson* says only that the *ownership* interest in the unmatured life insurance annuity policy, and the loan value up to $4000.00 are exempt. It does not say that the *payments* which will eventually be received from an insurance or an annuity policy are exempt.

Consistent with *Woodson*, this Court holds that California Code of Civil Procedure § 704.100(a) only exempts the *ownership* interest in an insurance or annuity policy and does not exempt the *beneficiary* interest in an insurance or annuity policy. Consequently, if the annuity in issue were deemed, *arguendo*, to be "unmatured," debtor would be entitled to claim an exemption in his ownership interest in the annuity. However, debtor would not be entitled to claim an exemption in *any* portion of the beneficiary interest—the 40 quarterly payments—payable under the annuity.

To interpret California Code of Civil Procedure § 704.100(a) as debtor advocates would be both (1) inconsistent with the statutory scheme of exemptions specified by California state law, and (2) contrary to public policy. It would allow a debtor to put substantially all of his assets beyond the reach of his creditors, rather than only putting the finite dollar amount of assets specified by the exemption scheme beyond the reach of his creditors.

California's statutory exemption system (California Code of Civil Procedure § 704.010 through § 704.210 (West 1987) like that of most states, provides a series of exemptions of specified dollar amounts relating to specific types of assets of the debtor. These exemptions are not limitless, they are primarily (with exceptions such as pain and suffering from personal injury) for quantifiable finite amounts. In effect the California exemption statutory

---

**14.** Though, as noted in *Woodson v. Fireman's Fund Insurance Company*, 839 F.2d 610 (9th Cir.1988), there are cases construing 11 U.S.C. § 522(d)(7) and (8), the federal exemption statute governing life insurance contracts (not an-nuity contracts). However, as noted *supra*, as allowed by 11 U.S.C. § 522(b)(1), California opted to use its own statutory exemptions instead of the federal exemption stated in 11 U.S.C. § 522(d).

scheme sets up a "pot" of possible exemptions having a finite dollar amount. One exemption is the Homestead exemption, discussed *supra*. Others are exemptions of specified amounts for motor vehicles, household furniture, appliances, provisions, personal effects, jewelry, health aids, tools used in the trade, deposit accounts, vacation credits, cemetery plots, etc. California Code of Civil Procedure §§ 704.010–704.210 (West 1989). One of the specified exemptions is an exemption of a specified amount for life insurance policies, as provided for by California Code of Civil Procedure § 704.100, here in issue. There is also a catch-all maximum $7,900.00 exemption, provided by California Code of Civil Procedure § 703.140(b)(1) and (5), sometimes referred to as the "wild card" exemption, which exempts the:

> "(1) The debtor's aggregate interest, not to exceed seven thousand five hundred dollars ($7,500) in value, in real or personal property that the debtor or a dependant of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependant of the debtor uses as a residence, or in a burial plot for the debtor or a dependant of the debtor.

> (5) The debtor's aggregate interest, not to exceed in value four hundred dollars ($400) plus any unused amount of the exemption provided under paragraph (1), in any property." California Code of Civil Procedure § 730.140(b)(1) (West 1987).

Thus, the California exemption scheme contemplates that a *specified* dollar amount of assets may be placed by the debtor beyond the reach of creditors. If debtor were correct that all assets may be placed beyond the reach of creditors—merely by converting them into a single premium deferred annuity—then there would be no need to have the rest of the California statutory exemptions for specific items, because most assets could be sold and the cash raised to purchase an annuity or, in the case of items such as paid earnings (California Code of Civil Procedure § 704.070), or deposit accounts (California Code of Civil Procedure § 704.080) which are already in liquid form, the cash could be withdrawn and used to purchase an annuity. It is hornbook law that a statutory scheme should never be interpreted so as to make parts of that statute or statutory scheme meaningless or redundant. *In re Borba*, 736 F.2d 1317, 1320 (9th Cir. 1984); See also *Martinez v. Traubner* 32 Cal.3d 755, 187 Cal.Rptr. 251, 653 P.2d 1046 (1982). To interpret the annuity section as debtor contends would require making exactly this error in statutory construction, since it would render many sections of the California Code of Civil Procedure exemption scheme, particularly the maximum $7,900.00 "wild card" exemption, superfluous.

From a public policy point of view, the position urged by debtor is also untenable. The statutory aim of a Chapter 7 bankruptcy of an individual debtor such as Dr. Moffat is to liquidate debtor's nonexempt assets in an orderly way for the benefit of debtor's creditors and to allow debtor a fresh start by discharging debts to the extent not paid by the liquidation of debtor's assets. E.g., *In re Tarnow*, 35 B.R. 1014 (Bankr.N.D.Ind.1983), *reversed on other grounds*, 749 F.2d 464 (7th Cir.1984). Debtor here seeks to obtain the discharge which constitutes this fresh start while keeping literally hundreds of thousands of dollars of his assets, in the form of the forty single premium deferred annuity payments of $4,370.00 each, and while leaving practically no assets to be liquidated for the benefit of his creditors. To allow debtors to purchase single premium deferred annuities to protect all or a substantial portion of their assets from liquidation, while receiving a discharge, would completely gut the rights of creditors in bankruptcy. This would be contrary to the bankruptcy statutory scheme, and clearly was not contemplated by the California state exemption scheme, which sought to provide exemptions for specified subject matters of finite dollar amounts. *See In re Krantz*, 97 B.R. 514 (Bankr.N.D.Iowa *1989*) (refusing to sustain a claim of exemption in a case where a debtor purchased a $500,000.00 plus annuity policy as

part of a conduct which the court found to be a fraud on creditors).

## C. This Court Does Not Reach the Issue of Whether the Annuity May be Held Non–Exempt on the Ground that Its Purchase Constitutes an Alleged Fraudulent Conveyance

The Trustee also argues that his objection to the claim of exemption regarding the annuity must be sustained because the purchase of the single premium annuity policy constituted a fraudulent conveyance pursuant to California law, specifically California Civil Code § 3439.04.[15] California Civil Code § 3439.04(a) provides that a transfer is fraudulent if the transfer is made:

(a) With actual intent to hinder, delay or defraud creditor of the debtor.

California Civil Code § 3439.04(b) provides that a transfer is fraudulent if the transfer was made:

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor: ...
(2) Intended to incur, or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due.

Attempting to convert assets into exempt form obviously has the practical effect of hindering creditors from being paid in the bankruptcy. However, such conversion may not constitute "intent to hinder" creditors as that term is used in fraudulent conveyance statutes, such as California Civil Code § 3439.04(a), since the Congressional History regarding the part of the Code discussing exemptions specifically states that converting property from nonexempt to exempt form is not fraudulent as to creditors.[16] See *Matter of Smiley,* 864 F.2d 562, 566 (7th Cir.1989), citing to House and Senate Reports regarding the Bankruptcy Code's exemption scheme, as follows:

"As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law". (*Citations omitted*) *Matter of Smiley,* 864 F.2d at 566.

However, the Congressional history just cited does not address California's specific fraudulent conveyance statute here in issue, California Civil Code § 3439.04. Moreover, in addition to the question of whether there was intent to hinder as required by California Civil Code § 3439.04(a), there is the question of whether the purchase of the annuity was fraudulent under California Civil Code § 3439.04(b), which deals with purchases made for less than fair consideration.

Here, the purchase was not for fair consideration. (See California Civil Code

---

**15.** The Trustee is not attempting to set aside debtor's purchase of the annuity from Executive Life or Debtor's transfer of the annuity to the Living Trust on the ground that these "transfers" constitute fraudulent conveyance. Instead, the Trustee is merely asking the court to disallow debtor's claim to an exemption in the annuity on the ground that debtor's acquisition of the annuity would constitute a fraudulent conveyance. However, there is some question whether the issue of fraudulent conveyance is in procedurally proper form to be decided as an element of a motion to disallow exemption. The Bankruptcy Rules require that a proceeding to set aside a conveyance as fraudulent be raised by filing an adversary proceeding, not by a motion. Bankruptcy Rules 7001; 11 U.S.C. § 548. The trustee might better raise a claim of fraudulent conveyance by bringing an appropriate adversary proceeding, rather than claiming that the fact a conveyance is fraudulent makes the property acquired by the conveyance nonexempt.

**16.** However, as noted in *Smiley,* even if such a transfer is not a fraudulent conveyance, such a conversion within one year of filing may constitute "hindering creditors" as that term is used in Bankr. 11 U.S.C. § 727(a)(2), so as to constitute grounds for denying a discharge under Bankr. 11 U.S.C. § 727(a)(2). See *In re Oberst,* 91 B.R. 97 (Bankr.C.D.Cal.1988). The court does not address the question of whether the conduct here in issue would be grounds for denying debtor a discharge under Bankr. 11 U.S.C. § 727 (as some courts have done) since that issue would have to be raised by bringing an adversary proceeding. E.g. *In re Tveten.* 70 B.R. 529 (Bankr.D.Minn.1987).

§ 3439.03) defining fair consideration). Debtor paid $190,000.00 to receive ten years of payments totaling $174,000.00. Taking into account a discount rate of 10%, the actual present value of the payments would be $112,441.00, or $77,559.00 less than the debtor paid. This is not fair consideration. Debtor was so intent on keeping his creditors from being paid that he decided he would rather lose over $75,-000.00 than have it go to his creditors. The analysis of debtor's schedules, of which the Court takes judicial notice, reflects that the purchase of the annuity in question rendered debtor insolvent. Thus, the transaction would appear to be fraudulent under California Civil Code § 3439.04(b), which does not require actual intent to hinder or defraud creditors.

However, even if the annuity purchase was held to be a fraudulent conveyance, it is unclear whether or not being a fraudulent conveyance would make the annuity nonexempt. Consistent with the legislative history of the code quoted *supra*, Ninth Circuit cases hold that changing nonexempt to exempt assets on the eve of bankruptcy to place them beyond the reach of creditors ("pre-bankruptcy planning") is allowable. E.g. *Grover v. Jackson, In re Jackson*, 472 F.2d 589 (9th Cir.1973); *Wudrick v. Clements, In re Wudrick*, 451 F.2d 988 (9th Cir.1971); and *Elliott v. Ostman, In re Ostman*, 340 F.2d 581 (9th Cir.1965).

The exception to this rule is where the course of conduct of the debtor in relation to converting assets rises to the level of "actual fraud." E.g., *In re Wudrick*, 451 F.2d 988 (9th Cir.1971). See *In re Krantz*, 97 B.R. 514, 531 (Bankr.N.D.Iowa 1989) (sustained objection to exemption because debtor's conduct in converting nonexempt to exempt property was done with intent to hinder, delay or defraud creditors, and rose to the level of extrinsic fraud); and *Matter of Armstrong*, 93 B.R. 197, 203 (Bankr.D.

Neb.1988) (claim of exemption sustained unless activities of debtor exhibited "extrinsic fraud").[17]

Because the Court has held that neither the ownership interest nor the beneficial interest in the annuity is exempt, for the reasons stated in part III C, *supra*, this Court does not need to reach, and does not reach, the questions of (1) whether the conveyance is fraudulent under either California Civil Code § 3439.04(a) or (b); or (2) whether, if the annuity were held to have been purchased by a conveyance that was fraudulent, that fact, or debtor's whole course of conduct, would constitute actual fraud or extrinsic fraud so as to constitute a sufficient ground to deny the exemption.

This opinion constitutes the Findings of Fact and Conclusions of Law of the Court.

---

17. Ninth Circuit cases decided after *Wudrick* discussing conversion of nonexempt to exempt assets impliedly, though not expressly, seem to preserve this "actual fraud" exception, because they state that conversion of assets from nonexempt to exempt status is not *per se* fraudulent. This leaves open the idea that the total course of conduct, in addition to the conversion itself, may rise to the level of actual or extrinsic fraud. E.g., *Grover v. Jackson (In re Jackson )* 472 F.2d 589, 590 (9th Cir.1973); *Wetzel v. Idaho State Bank, (In re Smith )* 366 F.Supp. 1213, 1218 (D.Idaho 1973).