**In re Edward N. HANLEY, Debtor.**

**No. 01–5072–8G7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 10, 2003.

Patrick R. Smith, Barbara A. Hart, Feinberg, Isaak & Smith, P.A., Tampa, FL, for Debtor.

Shari Streit Jansen, Sarasota, FL, for Chapter 7 Trustee.

David B. McEwen, David B. McEwen, P.A., St. Petersburg, FL, for the Chapter 7 Trustee, Shari Streit Jansen.

## ORDER ON "TRUSTEES OBJECTIONS TO DEBTOR(S) EXEMPTIONS"

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider a document entitled "Trustees Objections to Debtor(s) Exemptions."

The issue in this case is whether the chapter 7 trustee may administer the proceeds of 125 shares of Prudential Financial, Inc. as an asset of the estate. The shares were distributed to the Debtor as a result of a life insurance policy that he owned at the time that he filed his bankruptcy petition.

### Background

The Debtor, Edward N. Hanley, filed a petition under chapter 13 of the Bankruptcy Code on March 23, 2001. On his "Schedule B—Personal Property," the Debtor listed certain bank accounts, household goods and personal effects, a "401K with former employer," his "2001 estimated income tax refund," various vehicles, and his mobile home. The Debtor did not list his interest in any life insurance policies.

On December 13, 2001, the Debtor converted his chapter 13 case to a case under chapter 7.

In January of 2002, the Debtor received a notice regarding his account with Prudential Financial, Inc. (Debtor's Exhibit 3). The notice stated in part:

**We're pleased to welcome you as a new stockholder of Prudential Financial, Inc.**

On December 18, 2001, Prudential completed its conversion from a mutual company to a stock company. As part of our conversion, *we are issuing stock to eligible owners of the company. This includes anyone who owned an eligible policy or annuity contract as of December 15, 2000.* You have received the number of shares listed above. Compensation for all of your policies eligible for stock is included in this statement. **This does not affect your insurance policy or annuity in any way.**

Stock ownership *is a benefit of holding an eligible policy or contract.* It does not replace your policy or contract, or change your benefits, cash values, eligibility for policy dividends or guarantees. *You do not have to give anything up to receive stock.*

**How your allotment of shares was determined.**

Company actuaries and external advisors developed a plan for dividing the value of Prudential among its owners. Factors such as the type of life, annuity or health policy or contract you owned, the face value, and how long you owned it determined how many shares you received.

(Emphasis supplied.) The notice indicated that the Debtor received 125 shares of

Prudential Financial, Inc. The notice further indicated that capital gains taxes might apply if the Debtor subsequently sold the stock.

The Debtor sold the stock on May 15, 2002, for the sum of $4,165.48. (Debtor's Exhibit 4).

The Trustee contends that the Debtor's stock in Prudential Financial, Inc. is property of the bankruptcy estate. Specifically, the Trustee asserted in her Objection that the "Debtor has failed to list on his Schedule 'C' . . . 125.00 shares of stock in Prudential Financial which Debtor has failed to list or claim anywhere in his schedules; said assets should be declared non-exempt and property of the estate." (Doc. 42).

### Discussion

The Trustee commenced this contested matter by filing a document entitled "Trustees Objections to Debtor(s) Exemptions." Despite the title of the pleading, however, the parties appear to agree that the true issue in this case is not the Debtor's entitlement to a claimed exemption in any particular property. Instead, the issue is whether the Prudential stock that was distributed to the Debtor postpetition is "property of the estate" that may be administered by the Trustee.

The Court determines that the stock is property of the estate pursuant to § 541 of the Bankruptcy Code.

Section 541(a) provides in part:

**11 USC § 541.  Property of the estate**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a).

■■■■ "This generous provision sweeps into the bankruptcy estate all interests held by the debtor—even future, non-possessory, contingent, speculative, and derivative interests." *In re Dibiase*, 270 B.R. 673, 676 (Bankr.W.D.Tex.2001).

First, Section 541(a)(1) sets out the general rule: the commencement of a bankruptcy case creates an estate that can be liquidated to satisfy the claims of creditors. This estate is defined as including "all legal or equitable interests of the debtor in property as of the commencement of the case." Numerous decisions have recognized that this definition is very broad . . . .

. . . . .

Finally Section 541(a)(6) expands the scope of the general rule to include not only property interests of the debtor as of the commencement of the case, but also "[p]roceeds, product, offspring, rents, or profits of or from property of the estate."

. . . . .

Like the general estate definition of Section 541(a)(1), the scope of the "proceeds, product, offspring, rents, or profits" clause in Section 541(a)(6) is quite broad, not limited to the definition of "proceeds" set forth in the Uniform

Commercial Code, but encompassing any conversion in the form of property of the estate, *and anything of value generated by property of the estate.* S.Rep. No. 989, 95th Cong.2d Sess. 82 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977), 1978 U.S.Code Cong. & Admin.News 5787.

*In re Taronji,* 174 B.R. 964, 967–69 (Bankr.N.D.Ill.1994)(Emphasis supplied).

█ Further, to "ensure that 'anything of value' becomes part of a debtor's estate, Congress enacted § 541(a)(7), which provides that any interest in property that the estate collects or perfects post-petition is also property of the estate. 11 U.S.C. § 541(a)(7). Congress enacted § 541(a)(7) to clarify its intention that § 541 be an 'all-embracing definition and to ensure that *property interests created with or by property of the estate are themselves property of the estate.*' 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978); S17413 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini." *In re Allen,* 226 B.R. 857, 862–63 (Bankr.N.D.Ill.1998)(Emphasis supplied).

In this case, the Debtor acknowledges that he "owned a whole life insurance policy purchased through Prudential." (Doc. 57, Memorandum of Law in Support of Debtor's Motion for Summary Judgment, p. 8). It further appears that the Debtor owned the policy as of December 15, 2000, the eligibility date set forth in the notice sent by Prudential regarding the distribution of stock. The Debtor filed his bankruptcy petition on March 23, 2001.

█ The Debtor's interest in the underlying insurance policy is property of the estate under § 541(a)(1) of the Bankruptcy Code. *In re Caron,* 82 F.3d 7, 10 (1st Cir.1996)(The rights and powers under a life insurance policy owned by the debtor became property of the estate as of the filing of the bankruptcy petition); *In re*

*Poynor,* 68 B.R. 919, 921–22 (Bankr. N.D.Tex.1987)(An insurance contract was property of the estate under § 541(a)(1)).

The Debtor did not claim the policy as exempt on his bankruptcy schedules. (See Debtor's "Schedule C—Property Claimed as Exempt," filed on March 23, 2001).

█ Consequently, the Prudential stock that was distributed to the Debtor on account of the insurance policy is also property of the estate under § 541(a)(6) or § 541(a)(7) of the Bankruptcy Code, since the stock was generated from property of the estate. Although the facts of this case are unique, the Court is satisfied that the Prudential stock constitutes "proceeds, product, offspring, rents, or profit of or from property of the estate" within the meaning of § 541(a)(6). The Court reaches this conclusion on the basis of analogous decisions regarding property that was received by a debtor postpetition, but which was acquired on account of prepetition events or assets.

The Court in *In re Thomas,* 231 B.R. 581 (Bankr.E.D.Pa.1999), for example, discussed the issue of income received by a debtor postpetition.

Another analogous line of cases addresses the status of postpetition income derived from prepetition events. The general rule is that income *rooted in a debtor's prepetition past belongs to the estate* even when it is received postpetition. (Citations omitted). Under this rule, postpetition tax refunds derived from prepetition income are always held to be property of the estate. (Citations omitted). Similarly, postpetition payments related to prepetition insurance sales are considered to be estate property. (Citation omitted). In *In re Andrews,* 80 F.3d 906, 911–12 (4th Cir. 1996), the court even held that payments received pursuant to a prepetition covenant not to compete were rooted in the past, stemming from the prepetition sale

of the debtor's business, and therefore had to be included in the estate.

*In re Thomas,* 231 B.R. 581, 587 (Bankr.E.D.Pa.1999)(Emphasis supplied).

Courts that have considered the status of stock options owned by a debtor at the time of filing have also found that the interest was property of the estate.

> Although Debtor here did not become entitled to exercise all of the stock options until after filing his petition, he did possess at that time the contingent right to exercise the options in the future. This interest was *sufficiently rooted in the prebankruptcy past to be property of the estate.*

*In re Allen,* 226 B.R. 857, 865 (Bankr.N.D.Ill.1998)(Emphasis supplied). See also *DeNadai v. Preferred Capital Markets, Inc.,* 272 B.R. 21 (D.Mass.2001).

In this case, the Debtor owned the life insurance policy prior to the date that he filed his bankruptcy case. The petition was filed on March 23, 2001. According to the notice mailed in January of 2002, the Prudential stock was issued to the Debtor solely on account of his ownership of the policy as of the prepetition date of December 15, 2000. The Notice further stated that (1) the stock represented "compensation for all of [the Debtor's] policies eligible for stock;" (2) that distribution of the stock was a "benefit of holding an eligible policy;" (3) that the Debtor was not required to give up anything to receive the stock; and (4) that the amount of the distribution was calculated on the basis of the type, value, and length of ownership of the insurance policy held by the Debtor. (Debtor's Exhibit 3).

### Conclusion

Under these circumstances, it is clear that the Prudential stock was derived directly from the Debtor's prepetition ownership of the life insurance policy, and that the issuance of the stock was therefore "rooted in the Debtor's prepetition past."

The distribution of the stock was not dependent on any postpetition conduct, services, or assets of the Debtor. The underlying insurance policy was itself property of the estate, and the stock constitutes "proceeds, product, offspring, rents, or profits of or from property of the estate." The Prudential stock is property of the estate under § 541(a) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The "Trustees Objections to Debtor(s) Exemptions" is sustained.

2. The 125 shares of stock in Prudential Financial, Inc. issued to the Debtor, Edward N. Hanley, on or after January of 2002, and the proceeds of such stock, are property of the estate under § 541(a) of the Bankruptcy Code, and are therefore subject to administration by the Chapter 7 Trustee.